UNITED STATES *v.* AMERICAN CHICLE COM-
PANY.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF NEW YORK.

No. 175. · Argued January 24, 1921.—Decided June 1, 1921.

The Act of October 22, 1914, c. 331, 38 Stat. 754, imposed stamp
taxes in respect of scheduled articles and commodities "manu-
factured, sold, or removed for sale," including chewing-gum, taxed
on its retail value, and required manufacturers at the end of each ·
month to file a declaration that no such article or commodity had,
during the preceding month, been removed, carried, sent, or caused,
suffered or known to have been removed, carried or sent from their
premises, other than such as had been duly taken account of and
charged with the stamp tax. *Held* that, whether the tax was levied
in respect of the sale or of the manufacture, a payment by the man-
ufacturer was contemplated, and, when chewing-gum had been
manufactured and prepared for sale, its removal to other factories
and warehouses of the manufacturer for the purpose of future sale
to wholesalers rendered the manufacturer liable. P. 448.
Reversed.

THE case is stated in the opinion.

*The Solicitor General,* with whom *Mr. R. P. Frierson*
was on the brief, for the United States.

*Mr. Charles P. Spooner* for defendant in error.

Mr. Justice Holmes delivered the opinion of the court.

The defendant in error, the petitioner below, made a claim against the United States for $6,318.56 paid by it for revenue stamps under the Act of October 22, 1914, c. 331, § 5, and Schedule B, 38 Stat. 745, 754, 763, (extended by Resolution of December 17, 1915, c. 4, 39 Stat. 2, through December 31, 1916,) which it alleges were unused after January 1, 1916, and therefore were to be redeemed under § 24 of the Act of October 22, 38 Stat. 764, and the Act of September 8, 1916, c. 463, § 411, 39 Stat. 756, 793, the stamps having been purchased within two years of the application for redemption as required by the latter act. The United States demurred to the petition and the petitioner recovered in the District Court. The question is whether the petition discloses facts upon which it can be said that the goods were not "removed for sale" within the meaning of § 5, which levies the tax upon the things mentioned in Schedule B "manufactured, sold, or removed for sale."

The petitioner manufactures chewing gum, one of the articles mentioned in Schedule B, and when the product is prepared transports it from the place of preparation, in the language of the petitioner, "to one of its other factories or warehouses, as the state of the stock therein, or the condition of the trade, may demand." The goods concerned "had been removed from the factory at which they were manufactured and prepared for sale, to other factories or warehouses of petitioner in other parts of the United States, as hereinbefore set forth." They had upon them uncancelled revenue stamps, but belonged to the petitioner and were subject to no contract of sale on September 9, 1916, when the above mentioned Act of September 8, 1916, went into effect,

providing for the redemption of stamps, as we have said. The petitioner sells only to wholesale dealers, never at retail. By its own statement it must be taken to have removed the goods for the purposes of sale to such places as seemed most likely to offer a market, although no sale had taken place. It is said that upon the language of the petition the greater part of the goods may have been sent to other factories. But it is for the petitioner to state a case and so far as appears, and probably in fact, all the removals had the same end in view.

We may assume without deciding that the tax is levied in respect of the sale rather than of the manufacture of goods, but that throws little light upon the question of the precise moment when it falls due. The words "sold, or removed for sale" clearly mean that it falls due in some cases before a sale is complete. No one we presume would doubt that if the goods were removed for the purpose of satisfying an outstanding contract for a certain amount of chewing gum, the tax would be due at the moment of the removal although the goods were not yet appropriated to the contract in any binding way. It seems to us hardly more doubtful that the same would be true if goods were removed by a manufacturer to put into the window of a retail shop kept by it on the other side of the street. If we are right these examples show that removal for the purpose of forwarding a sale is a removal for sale within the meaning of the act. But on the face of the petition that was the object of the transfer of these goods to other parts of the United States.

Notwithstanding the assumption that the tax is levied in respect of sale rather than of manufacture we agree with the Government that the statute contemplates a payment by the manufacturer. This is shown by §§ 17–19. By § 20 every manufacturer of any article provided for in Schedule B is required to file a monthly declaration that no such article has been "removed . . . from

the premises of such manufacturer . . . other than such as have been duly taken account of and charged with the stamp tax," under a penalty for neglect. This seems to us to confirm the conclusion that we already have indicated. If the petitioner should send a mass of chewing gum from its factory in New Jersey or New York to a more promising market in another State it does not appear to us that it could escape the obligation of § 20 by showing that although the gum unquestionably had left the premises of the manufacturer it was destined to another warehouse that the petitioner also owned. That does not seem to us the natural or the rational meaning of the words used. It is said that the construction of a similar Act of June 13, 1898, c. 448, 30 Stat. 448–463, was the same while that was in force, and that presumably the later act adopted the construction. The argument is another confirmation of the view that we adopt.

The tax is four cents upon packages of not more than $1.00 of actual retail value, with four cents for each additional dollar, but this rough reference to retail price is far from implying that the package must have been sold in order to fix the tax. It appears to us entirely natural that Congress should look to the original place of manufacture as the place for the identification of the taxable goods and to the moment of leaving it, except in exceptional cases, as the time for the attaching of the tax. It seems to us to have done so in sufficiently unmistakable terms.

*Judgment reversed.*