Michael O'BRIEN, Respondent,

v.

B.L.C. INSURANCE
COMPANY, Appellant.

No. 71086.

Supreme Court of Missouri,
En Banc.

March 14, 1989.

As Modified on Denial of Rehearing
April 18, 1989.

James H. Ensz, Kansas City, for appellant.

James F. Ralls, Jr., William M. Quitmeier, Daryl Bredemeier, Kansas City, for respondent.

BLACKMAR, Judge.

This case is concerned with our important policy statutes[1] involving transfer of title to motor vehicles (§ 301.210, RSMo 1978[2]), odometer fraud (§§ 407.510—407.-555, RSMo 1978[3]), and salvage titles (§§ 301.217 and 301.227, RSMo Supp. 1979[4]).

On August 13, 1982, a Corvette owned by Beverly Scheerer was inundated by a flash flood, with the water level rising above the dashboard. Following inspection by Ben Hicks Chevrolet the defendant insurer's adjuster, Bob Eisenreich, undertook to settle with Scheerer for a total loss. The insurer, in the usual course of business, would sell a salvage vehicle to a salvage company for 20% of its value, which in this case would be $2200, but this particular vehicle was sold to defendant Ronald Wells, service manager for Hicks, for $5000.

In the consummation of the transaction with Wells several statutes were violated. The title was in the possession of a credit union which held a lien on the vehicle. Scheerer signed the title without having her signature acknowledged and failed to insert the odometer reading of 54,958 miles in the required space on the back (§ 407.-536, RSMo 1978[5]). The insurer did not send the certificate to the Division of Motor Vehicles with the notation that it was a salvage vehicle, nor did it obtain a certificate in its own name prior to marketing the vehicle (§ 301.227, RSMo Supp.1979[6]). It simply delivered the open title bearing Scheerer's signature to Wells, who paid the consideration agreed to.

Wells undertook the restoration of the vehicle. He changed jobs, becoming service manager of Bill Allen Chevrolet. Allen agreed to sell the Corvette "on consignment", and placed it on the company's used car lot. At some point the odometer had been rolled back so as to show 24,576 miles. The Corvette was then sold to the plaintiff for $11,500. The plaintiff was handed the certificate of title signed by Scheerer, with the odometer reading of 24,576 inserted and the acknowledgment completed by a notary public employed by Allen.

The plaintiff, complaining that the Corvette did not run well from the time he

---

1. Because significant changes have been made in some of the applicable sections, statutes cited are those in effect at the time of the events herein. The most recent amendments are noted.

2. Presently § 301.210, RSMo 1986. The only change from the 1978 statute was the amount of the application fee.

3. Presently §§ 407.511—407.556, RSMo 1986.

4. The 1988 amendments to these sections become effective July 1, 1989.

5. Section 407.536, RSMo Supp.1988, becomes effective July 1, 1989.

6. Section 301.227, RSMo Supp.1988, becomes effective July 1, 1989.

acquired it, filed suit against the insurer, Wells, and Allen. He settled with Allen before trial for $20,000. The jury returned a two-count verdict for the plaintiff against the insurer, assessing the damages for the flooding at $10,500 and for the odometer violation at $2,000. It also awarded punitive damages of $12,500 on the flooding count. The court eliminated all actual damages from the judgment on account of the settlement with Allen and entered judgment for $12,500 punitive damages, for $4,000 statutory treble damages for the odometer violation pursuant to § 407.545, RSMo 1978,[7] and for $1,000 attorneys' fees pursuant to the same statute. Plaintiff and the insurer both appealed. The court of appeals affirmed on the plaintiff's appeal and reversed outright on the insurer's appeal, finding that the insurer's conduct, although in violation of several statutes, was not the proximate cause of the damage to plaintiff. We granted transfer because of the important policy considerations underlying the statutes, and now affirm all parts of the judgment except for the award of attorneys' fees, which we vacate and remand for further proceedings.

### I. Defendant Insurer's Appeal

The defendant insurer launches a volley of arguments as to why the trial court should have directed a verdict in its favor. We deal with these seriatim.

#### a. Salvage Law Violations

■ The insurer concedes that its agents violated the salvage statutes in effect at the time of the sale to Wells, by failing to transmit the title to the Division of Motor Vehicles with an indication that the vehicle was a salvage vehicle (§ 301.227, RSMo Supp.1979 [8]) and by failing to obtain an affidavit from Wells stating that the vehicle was being acquired for salvage (§ 307.380.2, RSMo 1978 [9]). It argues that these omissions were not the proximate cause of any damage to the plaintiff.

It says that it did not know that Wells had any improper purpose of selling the vehicle to an unknowing purchaser, and that it could rely on his representation that he wanted it for his own use. It also observes that the vehicle could have been restored to over-the-road status if it passed a state inspection. The Corvette had been inspected by Allen before the sale to the plaintiff, in apparent conformity to the governing statutes. So, the insurer argues, the wrongdoing which caused the injury was solely attributable to Wells or Allen or both, and not to it.

We disagree. The situation as the jury might have viewed it was well summarized by the trial judge, in the following language:

There are several things in the Court's mind that indicates [sic] there has been intentional activity, not the least of which is the fact that double the normal salvage value was received from the buyer in return for which it appears he received a title that was open, the mileage was unlisted, and uncertified, and certainly that interpretation of the evidence would be one that would be viable to the jury and the inferences are to be drawn in favor of the Plaintiff....

The insurer's employees were quite familiar with the motor vehicle salvage statutes. Salvage operations were a part of their daily business. They nevertheless armed Wells with a certificate of title which enabled him to do the very thing the statutes prohibited, marketing the vehicle as an over-the-road vehicle without a salvage report to the Division of Motor Vehicles. The jury might believe that Wells wanted the certificate of title in the form submitted in order to carry out his scheme. The purchase price, well in excess of the salvage value, gives further indication that illicit marketing might be contemplated. It is not unreasonable, in the light of these circumstances, to charge the insurer with

---

7. Section 407.546, RSMo Supp.1988, becomes effective July 1, 1989.

8. Section 301.227, RSMo Supp.1988, becomes effective July 1, 1989.

9. Presently § 307.380, RSMo 1986.

the consequences of the subsequent acts of Wells and Allen.

The fact that the vehicle subsequently passed inspection by Allen is not controlling. Because of Wells' position with Allen the jury might be suspicious of the inspection. It might also conclude that, had the insurer made it possible for Wells to obtain only a salvage title, revealing that the vehicle had been flooded, Allen would have declined to market the vehicle, or would have taken additional precautions during the inspection, or would have advised the purchaser that the vehicle had been flooded.

*Williams v. Nuckolls*, 644 S.W.2d 670 (Mo.App.1982), does not help the insurer very much. There an automobile dealer had sold a veteran used car without performing the statutory inspection. The purchaser drove the vehicle approximately five miles, at which point the brakes failed. The court held that the purchaser's evidence failed to show that there was a defect in the brakes at the time of sale, or that any defect could have been discovered in the course of an inspection. Here the jury could have concluded that the insurer's omissions were an essential part of the chain of events leading to the plaintiff's unwitting purchase.

### b. *Intervening Cause*

■ The insurer next advances the hoary doctrine of intervening cause, both as to the salvage violation and the odometer violation, pointing out that the insurer had no part in the marketing of the Corvette or in the rollback of the odometer and suggesting that no damage would have occurred but for the willfully improper conduct of Wells and Allen. We disagree. If the insured's agents had not violated statutory requirements that were well known to them, Wells' scheme would have been much more difficult, and perhaps impossible, of accomplishment.

The discussion under Part I–a shows that compliance with the salvage title statutes very well might have prevented Wells and Allen from foisting a flood-damaged vehicle off on an unwitting purchaser. Had

the insurer insisted that the correct mileage be shown on the certificate before making any delivery of it, the odometer fraud could not have been carried out. It avails the insurer nothing to argue that the salvage title statutes then in effect did not require odometer disclosure on a salvage vehicle. The insurer did not deal with Scheerer's certificate as a salvage title. It rather transferred a certificate in a manner appropriate only for sale of an over-the-road vehicle.

The failure to require Scheerer to acknowledge her certificate, though not sued on, provides further evidentiary support for the plaintiff. Wells and Eisenreich might have been afraid that Scheerer would not be willing to acknowledge a certificate containing omissions, and so might have determined that it was not wise to resubmit it to her. A person willing to insert a figure in a blank certificate might be unwilling to make an alteration in a notarized certificate. The availability of notaries who do not insist on strict formalities is well known. The jury might consider these omissions in viewing the total picture.

■ The doctrine of intervening cause is not so strong as it seems to have been at one time. The essential question is foreseeability. Even criminal conduct will not always insulate a tortfeasor, if the criminal conduct is reasonably foreseeable. *Virginia D. v. Madesco Inv. Corp.*, 648 S.W.2d 881 (Mo. banc 1983); *Madden v. C & K Barbecue Carryout, Inc., and Decker v. Gramex Corp.*, 758 S.W.2d 59 (Mo. banc 1988); *Aaron v. Havens*, 758 S.W.2d 446 (Mo. banc 1988). In civil cases, we have regularly held that foreseeability is for the jury in all except the most obvious cases. *Jackson v. Ray Kruse Const. Co.*, 708 S.W. 2d 664 (Mo. banc 1986).

*First National Bank of Sikeston v. Goodnight*, 721 S.W.2d 122 (Mo.App.1986), is distinguishable, primarily because there the trial court found in favor of the defendant and specifically concluded that the plaintiff could not reasonably be expected to foresee the later events. There a real estate appraiser had executed a certificate

of appraisal describing a lot by street address. A borrower used this certificate to obtain a loan, adding to it the legal description of a lot owned by him but not located at the street address shown. The trial court's decision is understandable. There is no strong statutory policy regarding appraiser's reports, and the addition, amounting to a forgery, is something that one would not readily foresee.

The other cases cited are personal injury cases from the court of appeals and are of minimal help. They may indicate a broader application of the doctrine of intervening cause than our more recent decisions do.

Our statutes recognize automobile certificates of title as having some of the properties of negotiable instruments. The legislature recognized the possibility of fraud and sharp dealing and imposed detailed requirements.[10] One who utters an incomplete certificate of title has every reason to foresee improper conduct by unscrupulous persons who may come into possession of the certificate. The doctrine of intervening cause does not absolve the insurer.

### c. Punitive Damages

The insurer argues in its Point II that, even if the jury could conclude that the insurer's failure of compliance with the salvage statutes supported an award of actual damages, the acts and omissions of the insurer's employees amounted to mere negligence, which is insufficient to support an award of punitive damages.

■ Both parties characterize Count I of the amended petition as an action of negligence. This circumstance is not an insuperable bar to punitive damages, *Sharp v. Robberson*, 495 S.W.2d 394, 398 (Mo. banc 1973), calling for a finding of a "high degree of probability" that the acts could result in injury. The jury could characterize insurer's conduct in this manner. It could also find a reckless, or willful, disregard of statutory provisions well known to the insurers' agents, and contrary to their established procedures.

■ The plaintiff's instruction on punitive damages, not challenged on this appeal, required the jury to find that the conduct of the defendant "showed complete indifference to or conscious disregard of the rights of others." The jury could have found that this test was met. The insurer equipped Wells with a certificate which facilitated the fraud he perpetrated on the plaintiff. The jury could have found that the insurer was interested in disposing of the flooded vehicle at a price far in excess of the salvage price and was utterly unconcerned about persons in the position of the plaintiff. There are also indications that the insurer sought to sanitize its files to indicate that its employees had followed the usual routines.

The insurer cites *Jordan v. General Growth Development Co.*, 675 S.W.2d 901 (Mo.App.1984), in which a roofing contractor failed to heed suggestions about the improper installation of certain bolts, and as a result water dripped onto the floor of the building. The plaintiff was injured when she slipped on the wet floor. The court of appeals allowed an award of actual damages to stand but set aside the jury's award of punitive damages, concluding that the defendant's conduct could not be said to demonstrate "conscious disregard" or "complete indifference" to the safety of others, as required in the governing instruction. That case is not like this one, in which the agents of the insurer failed to follow their well-established procedures and had a possible motivation for not doing so.

The jury did not have to accept the insurer's explanation of its employees' conduct or its evidence as to which of the two employees involved performed particular acts. It did not have to believe Wells' explanation that he wanted the flood-damaged vehicle for his own use or even to believe that this representation was made. As we have said earlier, it could have found that Wells required a certificate of title in

---

**10.** In addition to §§ 301.210 and 407.536, *see also,* § 301.190.3, RSMo 1986, requiring certificates of title to "be manufactured in a manner to prohibit as nearly as possible the ability to alter, counterfeit, duplicate, or forge such certificate without ready detection."

the form submitted to him, and that the insurer's agents sought to assist him in obtaining the certificate he desired. The evidence supports the award of punitive damages.

### d. "Intent to Defraud"

The insurer points out that the odometer statute gives rise to a civil action only if the element of "intent to defraud" is established. It cites *Bizzle v. Enterprise Leasing*, 741 S.W.2d 84 (Mo.App.1987), for the proposition that a plaintiff does not make a case by the bare showing that the odometer reading is omitted from the certificate of title when a vehicle is sold.

It is argued that the insurer never intended to deal with the Corvette except as a salvage vehicle. We again answer that its method of dealing refutes this claim. The vehicle was sold to Wells with a certificate of title appropriate only for an over-the-road vehicle.

■ The defendant cites cases setting forth the elements of common law fraud. The courts have been chary about allowing recovery in the old "action on the case for fraud and deceit," and have required that long list of elements be established. *See Emerick v. Mutual Benefit Life Insurance Company*, 756 S.W.2d 513, 519 (Mo. banc 1988). The odometer statutes, by contrast, are remedial statutes and should be construed to give effect to their purpose. The plaintiff must show intent to defraud and damages as a result. The other elements of common law fraud are not a part of the odometer action.[11]

■ There of course is no evidence that the insurer participated in the odometer rollback, or had any desire that it be accomplished, but it equipped Wells with a certificate which allowed him to perpetrate the very fraud he effected, leading to the purchase by an innocent person of a vehicle with a rolled back odometer. When the insurance company's agents' knowledge of the requirements, their departure from established procedures, and the possibly misleading file entries are considered, the jury could find that they were knowing participants in Wells' scheme.

Our conclusion is consistent with the opinion of Judge Floyd Gibson in *Tusa v. Omaha Auto Auction, Inc.*, 712 F.2d 1248, 1253 (8th Cir.1983), in which he observes that intent to defraud usually must be established by circumstantial evidence, and concludes that such intent may be inferred from actual knowledge that a statutory violation is being committed. We agree with Judge Gibson that the defendant's familiarity with the statutory requirements fortifies the inference of intent to defraud when the procedures were not followed. Here the multiple statutory violations loom large. The statutes are designed to serve an important policy purpose, and willful violations should be strongly dealt with.

### e. Inconsistent Findings

■ The insurer perceives some inconsistency in allowing a recovery on a "negligence" theory under Count I and on an "intent to defraud" theory which is the basis of Count II. It is also suggested that there is an inconsistency in treating the Corvette as a "salvage vehicle" for purposes of the salvage title statutes and as an over-the-road vehicle when the odometer violations are considered.

There is no inconsistency. By reason of the salvage title violations, Wells and Allen were able to market a flood-damaged vehicle as an ordinary vehicle in commerce. Because of the odometer rollback, they were able to hold out to the purchaser that the vehicle had far less use than was actually the case. The evidence segregated the damages from the two types of violations. There is no reason why recovery for both cannot be had.

*Gollwitzer v. Theodoro*, 675 S.W.2d 109 (Mo.App.1984), goes no further than holding that a plaintiff who submits only a theory of common law fraud may not recover attorneys' fees authorized by a particular statute which was mentioned in the

---

**11.** In *Comegys v. Chrysler Credit Corp.*, 577 S.W. 2d 873 (Mo.App.1979), the plaintiff apparently elected to submit on a common law fraud theory.

plaintiff's petition, but not submitted to the jury.

## II. The Plaintiff's Appeal

### a. Elimination of Actual Damages

■ The plaintiff grieves the elimination of all actual damages from the verdict on account of the settlement with Bill Allen. It argues that Count I, declaring on the salvage title violation, could not have been pursued against Allen. We disagree. Wells, who initiated the wrongdoing, entered Allen's employ as service manager. The sale of the vehicle was the joint enterprise of Wells and Allen. Wells must be taken to have carried his guilty knowledge to Allen and to have instructed Allen in terms of that knowledge. This is so whether or not Wells imparted any information to any other employee of Allen. A claim against Allen based on the salvage title violation, then, is quite plausible. Allen surely expected to be released from any such claim when it paid the $20,000. We believe that the trial judge's action in eliminating all actual damages from the verdict was supported by the evidence and affirm his action.

### b. Attorneys' Fees

The trial judge awarded attorneys' fees of $1,000, without a hearing. The plaintiff contends that an appropriate award, based on the regular hourly rates of the participating attorneys, would be $28,000.

■ Numerous authorities hold that the trial judge is an expert on the subject of attorneys' fees and may award fees even though no evidence of reasonableness is introduced.[12] We do not disagree with this general proposition, but, when attorneys' fees are in issue, the court should hear from the parties just as in other matters. The trial judge erred in not doing so.

■ Consideration of the appropriate fee should begin with the rates customarily charged by the attorneys involved, and by other attorneys in the community for similar services. The approach of *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974), has received favorable comment and has been often followed. *See also Tusa v. Omaha Auto Auction, Inc., supra,* 712 F.2d at 1254–6.

■ One important consideration is the result achieved. *See Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed. 2d 40 (1983); *Texas State Teachers Association v. Garland Independent School District,* — U.S. ——, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). The efforts of plaintiff's attorneys at trial were not wholly successful. They failed to establish actual damages in excess of the amount previously paid in settlement. Their activities, however, undoubtedly contributed to the settlement reached with Allen, and this circumstance may be taken into account. The fee should bear some relation to the award, *Tusa, supra,*[13] but there is no established principle that the fee may not exceed the damages awarded.

■ The insurer suggests that the plaintiff's attorneys may have contingent contracts with their client. Counsel are entitled to a reasonable fee, and are not limited to their agreed share of the client's recovery. *See Blanchard v. Bergeron,* — U.S. ——, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989).

■ A fee award, moreover, is appropriate only for the odometer violation declared on in Count II. Fees solely attributed to the salvage title count may not be awarded against the defendant. *Cf. Gollwitzer v. Theodoro, supra.* The required segregation may be difficult, but must nevertheless be essayed.

---

12. *Roberds v. Sweitzer,* 733 S.W.2d 444 (Mo. banc 1987); *Nelson v. Hotchkiss,* 601 S.W.2d 14 (Mo. banc 1980); *Heilbron v. ARC Energy Corp.,* 757 S.W.2d 294 (Mo.App.1988); *Waldron v. Ragland,* 716 S.W.2d 861 (Mo.App.1986); *General Electric Credit Corp. v. Stover,* 708 S.W.2d 355 (Mo.App.1986); *Arnett v. Johnson,* 689 S.W.2d 836 (Mo.App.1985).

13. In *Tusa* the plaintiffs' attorneys sought fees of $27,000 and the trial court awarded $12,000. The court of appeals reduced this award to $8,000, giving consideration to the damage award of $1,500.

It is the sense of the statute that private litigants aid the public authorities in the enforcement of the odometer statutes, and that the cost of litigation not stand in the way. Fees must be determined with this statutory policy in mind.

The judgment is affirmed, except as to attorneys' fees. The award of $1,000 is vacated and the cause is remanded to the circuit court with directions to hear the parties and determine an appropriate fee under the guidance of this opinion.

BILLINGS, C.J., and RENDLEN and HIGGINS, JJ., concur.

ROBERTSON, J., dissents in separate opinion filed.

WELLIVER, J., and CRANDALL, Special Judge, dissent and concur in separate dissenting opinion of ROBERTSON, J.

COVINGTON, J., not sitting.

ROBERTSON, Judge, dissenting.

Because I believe the majority errs when it affirms the trial court's judgment permitting punitive and statutory damages against defendant insurance company, I respectfully dissent. In my view, the plaintiff failed to make a submissible case against the insurance company under Section 407.545, RSMo 1978. Further, I do not believe the insurance company's failure to transmit a salvage title at the time of the sale to defendant Wells is the proximate cause of the plaintiff's injury in this case.

With my editorial changes and additions, I adopt the relevant portions of the unanimous Court of Appeals' opinion relating to B.L.C.'s liability in this matter.[1]

The particular facts and circumstances of this matter give rise to the following questions. First, were the acts and omissions of B.L.C. negligence per se and as such, is respondent entitled to recover as a result thereof? Second, were the acts and omissions of B.L.C. of such a nature as to constitute an intent to defraud and to entitle respondent to recover against B.L.C.?

I.

There is no dispute that B.L.C. failed to follow or comply with Section 301.227, RSMo 1969,[2] which reads:

Whenever a vehicle is sold for salvage, dismantling or rebuilding, the seller must forward the certificate of ownership or salvage certificate of title to the director of revenue within ten days. Upon receipt of the proper application and one-dollar fee, the director shall issue a negotiable salvage certificate of title to the purchaser of the salvaged vehicle. Whenever a vehicle is sold for destruction and a salvage certificate of title exists, the seller shall forward the salvage certificate of title to the director of revenue within ten days, with the notation of the date sold for destruction and the name of the purchaser.

Section 301.227 requires B.L.C. to forward the title to the vehicle to the Missouri Department of Revenue. B.L.C. concedes it failed to do so. Respondent contends that such failure by B.L.C. was negligence per se, giving rise to recovery of damages for respondent against B.L.C.

Section 307.380.2, RSMo 1986, reads as follows:

Nothing contained in the provisions of this section shall be construed to prohibit a dealer or any other person from selling a vehicle without a certificate of inspection and approval if the vehicle is sold for junk, salvage, or for rebuilding, or for vehicles sold at public auction or from dealer to dealer. The purchaser of any vehicle which is purchased for junk, salvage, or for rebuilding, shall give to the seller an affidavit, on a form prescribed by the superintendent of the Missouri state highway patrol, stating that the vehicle is being purchased for one of the reasons stated herein. *No vehicle of the type required to be inspected by section*

---

1. The opinion was authored by the Honorable Donald Manford. The Honorable William Turnage and the Honorable Charles Shangler concurred.

2. This statute was amended in 1983 and again in 1986.

*307.350 which is purchased as junk, salvage, or for rebuilding shall again be registered in this state until the owner has submitted the vehicle for inspection and obtained an official certificate of inspection and approval, sticker, seal or other device for such vehicle.*

(emphasis added). B.L.C. argues that even though it failed to comply with Section 301.227, RSMo 1979, and even if its representative had retrieved the vehicle title from Wells and then submitted the title to the Missouri Department of Revenue, its actions would not have prevented Wells and Bill Allen from obtaining a "normal over the road nonsalvage title" to the vehicle and in turn, giving such title to respondent.

B.L.C. further argues that although it failed to comply with Section 301.227, RSMo 1979, it could not, by acts and/or omissions, have caused respondent's damages. B.L.C. specifically refers to Section 307.380.2 as support for this argument. B.L.C. correctly points out that the evidence of record discloses that Bill Allen completed a vehicular inspection on the vehicle. Such action satisfied the requirements of Section 307.380.2, causing the vehicle to be an "over the road vehicle" subject to and available for transfer by sale or other means.

Respondent argues that the acts and omissions of B.L.C., in failing to comply with the so-called "salvage statutes", were negligence per se and sufficient to support a recovery for damages. This question is not novel or of recent origin in our law.

A recent decision by the Missouri Court of Appeals, Eastern District, addressed the question. In *Williams v. Nuckolls*, 644 S.W.2d 670, 673 n. 4 (Mo.App.1982),[3] the Eastern District held that before the violation of a statute can be held to be actionable negligence, certain factors must be shown to exist.

Before it can be held that violation of a statute constitutes actionable negligence, it must appear that there was in fact a violation of the statute, the injured party was within the class of persons intended

to be protected by the statute, the injury complained of was of such character as the statute was designed to prevent, and the violation was the proximate cause of the injury.

In applying the foregoing rule to the particular facts and circumstances of the present proceedings, it is obvious that (1) the salvage statute was violated by B.L.C.; (2) respondent was a person within the class protected by the statute; and (3) that the injury complained of was of such character as the statute was designed to prevent. However, the fourth element is lacking in the present proceedings.

Respondent's claim is based upon the diminution of value of the vehicle as a result of two elements: First, the flooded condition of the vehicle and second, the vehicle had some 30,000 miles in addition to the figure represented on the odometer. There is absolutely no evidence that B.L.C. was involved in any odometer rollback. The only reasonable inference from the evidence is that Wells committed the rollback or, at least, the same was committed during Wells' possession of the vehicle. Thus, the relevant question is whether the failure of B.L.C. to forward the salvage title to the Director of Revenue was the proximate cause of respondent's damage.

The salvage law, Section 301.227, RSMo 1979, is clear by its wording and intent that it is designed to prevent any vehicle designated as salvage from becoming acceptable for registration. In other words, a vehicle deemed salvage shall not be available for registration as a vehicle legally operable upon our roadways. The purpose of said statute is quite obvious—to prevent registration of defective vehicles. The status of a salvage vehicle, however, is subject to change by virtue of Section 307.380 upon proper vehicular inspection.

The record is quite clear that the odometer on the vehicle herein was "rolled back" after the vehicle passed to Wells. In addition, the vehicle was inspected by Bill Allen Chevrolet prior to its sale to respondent. While B.L.C. was negligent in failing to

**3.** The majority dismisses *Nuckolls* without analysis.

comply with Section 301.227, RSMo 1979, the evidence upon this record reveals that the damages claimed by respondent arose from the intervening acts and omissions of Wells and Bill Allen Chevrolet. Stated another way, the injury sustained by respondent was not occasioned by the statutory violation by B.L.C., but occurred as the direct result of the acts and omissions of Wells and Bill Allen Chevrolet. Thus, the fourth element of the rule prescribed by *Williams, supra,* was not met. When the vehicle was inspected and placed for sale by the joint acts of Wells and Bill Allen, the purpose and intent of the salvage statute, Section 301.227, RSMo 1979, and Section 307.380.2 had been met. The acts and omissions of Wells and Bill Allen intervened and were the proximate cause of respondent's injuries.

To conclude that the acts and omissions of B.L.C. were actionable under the particular facts and circumstances herein, it would have to be concluded that upon its failure to comply with the salvage statute, B.L.C. could foresee that the odometer on this vehicle would be rolled back and that someone would purchase this vehicle as represented by a different odometer reading and without reference or disclosure of the flood damage. Under the particular facts and circumstances herein, such was not foreseeable, the majority's glib assertion to the contrary notwithstanding. The evidence reveals that at the time B.L.C. agreed to sell the vehicle to Wells, Wells represented to B.L.C. his intent to purchase the vehicle *for his own personal use.* There is no evidence that B.L.C. was ever aware of the acts or omissions by Wells or Bill Allen Chevrolet until it was hauled into court.

The fact remains that had B.L.C. complied fully with the salvage statute, the compliance would not have prevented any of the acts subsequently undertaken by Wells and Bill Allen Chevrolet. The acts by these latter individuals were the proximate cause of respondent's injuries. The intervening acts of Wells and Bill Allen were in no way related to B.L.C.'s failure to comply with the salvage statute. The acts and omissions of Wells and Bill Allen

were independent of, and far removed from, any act of B.L.C. Only the broadest speculation provides a basis for the conclusion that B.L.C. could have foreseen the injury which respondent sustained.

I believe the ruling in *First National Bank of Sikeston v. Goodnight,* 721 S.W. 2d 122 (Mo.App.1986), is persuasive. *Goodnight* involved the appraisal of property. Subsequent to the appraisal, the purchaser, in order to secure financing, inserted a different property description. In affirming the trial court's ruling holding the lender could not recover against the appraiser, the Missouri Court of Appeals, Southern District, reaffirmed the general rule that in order for an act to constitute the proximate cause of injury, such act must have been reasonably foreseeable.

The present case, upon its particular facts and circumstances, shows a lack of foreseeability by B.L.C. of the acts and omissions by Wells and Bill Allen simply upon B.L.C.'s failure to have complied with the salvage statute. I believe the trial court erred when it failed to direct a verdict in favor of B.L.C. upon respondent's claim of negligence per se.

## II.

The remaining question is whether, at the time B.L.C. transferred the open title to Wells, such transfer was subject to the Missouri Odometer Disclosure Act, Section 407.510, *et seq.,* RSMo 1978, and if so, whether the failure of B.L.C. to comply with such statute, plus its acts and omissions concerning the transfer, constituted the intent to defraud necessary to permit respondent to recover under Section 407.-545.

## A.

In the first instance, the evidence indicates that B.L.C. and Wells obviously were aware that the vehicle was flood damaged. B.L.C. closed out its insured's claim on that basis. Wells represented to B.L.C. that he wanted the vehicle for his own use. The entire transaction between B.L.C. and Wells was for the sale/purchase of a sal-

vage vehicle. As for the salvage statute applicable at the time of this transaction, there was nothing which was required by the statute relative to an odometer or mileage disclosure. It is obvious from the study of the applicable statute that salvage vehicles were to be removed or prevented from being used as properly registered vehicles or, as they are commonly referred to, "over the road vehicles." The then-applicable statutes required that before a salvage vehicle could again become an over the road vehicle, it had to be properly inspected and a certificate of title had to be secured from the state.

At the time of this transaction, Section 407.536.1, RSMo 1978, read as follows:

> Any person transferring ownership of a motor vehicle previously titled in this or any other state shall do so by assignment of title and shall place the mileage registered on the odometer at the time of transfer above the signature of the transferor. The notarized signature of the transferor below the mileage shall constitute an affidavit of mileage. If the true mileage is known to the transferor to be different from the number of miles shown on the odometer or the true mileage is unknown, an affidavit from the transferor shall accompany the assignment of title which shall contain all facts known by the transferor concerning the true mileage of the motor vehicle. That affidavit shall become a part of the permanent record of the motor vehicle with the Missouri department of revenue. The department of revenue shall place on all new titles issued after September 28, 1977, a box titled "mileage at the time of transfer."

B.L.C. contends that since the particular nature of the vehicle herein was that of a salvage vehicle, Section 407.536 does not apply, and absent any requirement of an odometer disclosure under the salvage statute, it must follow that B.L.C. could not have intended to defraud respondent. This argument, however, circles upon itself until it loses its force. By its own admission B.L.C. did not tender a salvage title, but passed along an over-the-road title from the original owners. Section 407.536 applies; Section 407.545.1 provides both a cause of action and a penalty for persons who violates that section "with the intent to defraud." In my view, the critical question for resolution is whether B.L.C. intended to defraud respondent by its actions within the meaning of Section 407.545.1.

Without burdening itself with analysis, the majority opinion announces that "[t]he other elements of common law fraud are not a part of the odometer action." Instead, "[t]he plaintiff must show intent to defraud and damages as a result." Unfortunately, the majority perceives no need to define the meaning of the phrase "intent to defraud."

In *Shipe v. Mason*, 500 F.Supp. 243, 245 (E.D.Tenn.1978), the court said: "Within the meaning of 15 U.S.C. sec. 1989(a) [Motor Vehicle Information and Cost Savings Act] ... 'intent to defraud' must be held to mean to act wilfully and with the specific intent to deceive any purchaser or potential purchaser of a motor vehicle...." This definition does away with the need for privity between the alleged defrauder and the purchaser. To the extent that the *Shipe* definition permits a finding of liability on the part of a person far down the chain of title who falsifies an odometer reading for title purposes, I agree wholeheartedly.

*Tusa v. Omaha Auto Auction, Inc.*, 712 F.2d 1248 (8th Cir.1983), upon which the majority relies, expands the definition to infer the necessary intent from reckless disregard for the truth or gross negligence in filling out an odometer statement. But in *Tusa* the evidence was that an auto auction filled out an odometer statement with a false mileage reading without considering clearly contrary mileage information in its own possession. Such gross negligence or reckless disregard for the truth properly supports liability, in my view. I thus have no argument with *Tusa*.

Yet this case is different. Here B.L.C. passed along a title which had no mileage statement to a person who stated that he intended to purchase the car for his own use. Far from an intent to defraud, the open mileage statement on the title informed the immediate purchaser that the mileage was unknown. The majority turns

this evidence to permit an inference that the open title created an opportunity for Wells to defraud others. Obviously, that is what happened in this case. But the record is devoid of any evidence that B.L.C. provided or intended to provide any information upon which any buyer could rely as to the mileage of this vehicle. All of the relevant case law, including *Tusa, Shipe,* and *Ryan v. Edwards,* 592 F.2d 756 (4th Cir.1979), requires that the person intending to defraud knowingly or recklessly provide odometer information which is false as a basis for liability.

In this case, Wells performed the culpable act the intent of which was to defraud a subsequent purchaser, not B.L.C.[4] I cannot agree with the majority's conclusion that B.L.C.'s failure to obtain the odometer statement from the original owner proceeded from an intention to cause respondent's reliance on a false odometer reading. Nor do I believe that B.L.C.'s actions constitute the gross negligence or reckless indifference that would support the result reached by the majority in this case.

I intend nothing in this opinion to minimize the seriousness of the problem facing purchasers of used automobiles. Unscrupulous automobile dealers who defraud their customers through odometer rollbacks deserve to be punished and punished severely; their customers deserve to be made whole. In this case, the persons proximately responsible for the fraud worked on respondent have paid him damages. But through the apparently limitless fecundity of the appellate mind, the majority finds a way to broaden the pool of solvent persons who can provide an additional source of funding to pay punitive damages, without, in my view, an appropriate concern for causation and in disregard of the plain language of Section 407.545.1. For these reasons, I dissent.

4. B.L.C. merely acted as a conduit in this case. I am unable to distinguish between the act of the original owner, who signed the title without providing an odometer statement, and that of B.L.C. who passed that title along to Wells, for purposes of culpability under Section 407.545.1. To the extent that B.L.C. is liable, so is the original owner.