2000 OK CIV APP 141

**Michael CONATZER and Amanda Conatzer, individually, and as husband and wife, Appellants,**

**v.**

**AMERICAN MERCURY INSURANCE COMPANY, INC., f/k/a American Fidelity Insurance Company, an Oklahoma insurance company; and, Prestige Auto Brokers, Inc., Appellees.**

No. 94,210.

Court of Civil Appeals of Oklahoma, Division No. 4.

Sept. 5, 2000.

Rehearing Denied Nov. 14, 2000.

David Humphreys, Luke J. Wallace, Humphreys Wallace Humphreys, Tulsa, Oklahoma, for Appellants.

Anthony P. Sutton, Herrold, Herrold, Sutton, Tulsa, Oklahoma, for Appellee American Mercury.

Terry L. Weber, Weber & Associates, P.C., Tulsa, Oklahoma, for Appellee Prestige Auto.

## OPINION

STUBBLEFIELD, J.

¶ 1 This is an appeal from an order overruling Plaintiffs' motion for class certification, and dismissing their multi-theoried fraud/consumer protection action for damages. The cause is submitted for accelerated review pursuant to Supreme Court Rule 1.36(a)(2), 12 O.S. Supp.1999, ch. 15, app. 1. After a review of the record on appeal and applicable law, we affirm in part, reverse in part, and remand for further proceedings.

¶ 2 By their second amended petition, Plaintiffs Michael and Amanda Conatzer brought suit against American Mercury Insurance Company, Inc. (AMI), formerly known as American Fidelity Insurance Company; AMI's purported parent corporation,

Mercury General Corporation;[1] Prestige Auto Brokers, Inc. (Prestige); Danny Cross and Jerry Nixon, individually and d/b/a Fort Smith Engine Works; and Turnpike Ford, Inc. Their lawsuit stated numerous claims and/or theories of recovery for breach of warranty, violation of consumer protection laws, deceit, negligence, and deceptive trade practices. They sought class action certification of their consumer protection, deceptive trade practices, and statutory deceit claims against AMI, and Prestige.

¶ 3 The action stems from Plaintiffs' purchase on October 31, 1996, of a 1994 automobile from Turnpike Ford. They would subsequently discover that the automobile had been substantially damaged in a collision, to a degree which should have necessitated a salvage notation on the vehicle's certificate of title, but which had not been noted. Plaintiffs allegedly discovered that the car had undergone "inadequate, improper and potentially dangerous repair work" and contained "hidden damage to the vehicle." The record indicates that claims were settled against all parties except AMI and Prestige. Thus, we shall only discuss the specific claims against those entities.

¶ 4 Plaintiffs alleged that AMI was the insurer of the vehicle, and had paid insurance proceeds to its insured for damage to the vehicle, and had taken possession of the title and the car. Then, Plaintiffs claim, AMI failed to obtain the salvage certificate of title required of an insured by 47 O.S. Supp.1999 § 1111(C), and caused the wrongly-titled defective vehicle to be placed in the stream of commerce, ultimately resulting in their purchase of the vehicle. Plaintiffs claimed that AMI and Prestige entered into an agreement to effect what they labeled as "title laundering" whereby Prestige purchased all of AMI's Oklahoma salvage loss vehicles (allegedly 1,429 such vehicles) with an intent to transfer them out of state so as to apply less stringent salvage title laws without notice to the Oklahoma Tax Commission, as a means of evading Oklahoma salvage title requirements.

¶ 5 Both AMI and Prestige sought dismissal of Plaintiff's claims. The trial court denied Plaintiffs' motion for class certification, and dismissed both AMI and Prestige. Plaintiffs appeal.

¶ 6 Because evidentiary materials were made a part of the motions to dismiss, the appealed judgment must be treated as one for summary judgment. 12 O.S.1991 § 2012(B). Summary judgment is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *Kirkpatrick v. Chrysler Corp.*, 1996 OK 136, ¶ 2, 920 P.2d 122, 124. Since the decision involves purely legal determinations, the appellate standard of review of the trial court's grant of summary judgment is *de novo*. *Id.* This court will review all inferences and conclusions to be drawn from the underlying facts contained in the evidentiary materials in a light most favorable to the party opposing the motion. *Id.*

¶ 7 Because the trial court did not state any specific grounds upon which it sustained the motions to dismiss of AMI and Prestige, we must address each of the bases raised by those parties to ascertain whether Plaintiffs stated any claim against them upon which relief could be granted.[2] We do not address any claims based upon the Deceptive Trade Practices Act because of our conclusion that those are not valid claims. It has been definitively established that those laws protect competing business interests and do not present a basis for suit by consumers. *See Bell v. Davidson*, 1979 OK 66, 597 P.2d 753. Certainly Plaintiffs are not business competitors of either of the two remaining defendants.

---

1. We shall hereafter generally refer to AMI and its parent corporation as "AMI."

2. In its motion to dismiss, Prestige mostly adopts the arguments and authorities cited by AMI. As did AMI, it maintained it had no privity with Plaintiffs, an argument we find without merit. Prestige also claims that it cannot be guilty of negligence, fraud, or violation of the consumer protection laws, when AMI had the duty to obtain the salvage title. However, that is not a defense justifying dismissal when Prestige is alleged to have acted in concert with AMI to commit the alleged wrongs.

¶ 8 AMI claimed that it had no privity of contract with Plaintiffs, but it makes no substantial argument how this would matter when the claims of Plaintiffs are not based upon contract or any legal relationship. AMI more substantially argues that Plaintiffs' claims based on the Oklahoma Consumer Protection Act, 15 O.S.1991 & Supp.1999 §§ 751 through 790, must fail because AMI "is statutorily exempt from suit under the Act." It cites section 754(2) of the Act which states "[n]othing in this act shall apply to . . . [a]ctions or transactions regulated under laws administered by the Corporation Commission or any other regulatory body. . . ." It contends that as an insurer its business activities are subject to the regulatory oversight and control of the Insurance Commissioner, and, therefore, no claim could lie against it for alleged violations of the Consumer Protection Act.[3] We disagree.

¶ 9 AMI claims that Article 12 of the Oklahoma Insurance Code, 36 O.S.1991 & Supp.1999 §§ 1201 through 1228, regulates activities which might be characterized as unfair, deceptive, or fraudulent trade practices. However, our review of the article leads us to conclude that it deals with unfair or deceptive practices as they might effect the "business of insurance" (Section 1203), which we conclude from review of the entire article deals with the manner of competition of an insurance company in gaining its business, and the manner of actually dealing with its insureds, including payment of claims. Thus, the Insurance Code provides for regulation and oversight of an insurer's activity in the business of insurance. In this instance, although the activity of reselling cars upon which claims have been paid may be a regular part of AMI's activities, it certainly is not an inherent part of the business of insurance.

¶ 10 As support for its position, AMI cites cases between insurers and their insured from other jurisdictions. In *Washington Osteopathic Medical Association v. King County Medical Service Corp.*, 78 Wash.2d 577, 478 P.2d 228 (1970), the state's consumer protection act was held not applicable to a plan for prepaid medical and health care that was specifically regulated by the health care services act and the insurance commissioner. In our case no other law provides for specific regulation of AMI's car-selling activities.

¶ 11 AMI also cites *Rosenberg v. Liberty Mutual Insurance Company*, 163 Ga.App. 82, 293 S.E.2d 737 (1982), but that case dealt with a contractual dispute between an insurer and its insured. It has nothing to do with consumer protection and/or fraud.

¶ 12 Finally, AMI cites *Comeaux v. Pennsylvania General Insurance Co.*, 490 So.2d 1191 (La.Ct.App.1986). That case did involve a claim of unfair trade practices, but was an action brought by an insured against his insurer for failure to pay a claim. Indeed, such claims between the insured and insurer do fall within the ambit of the Insurance Code. However, that is certainly not the circumstance of this case, because there is no dispute between an insurer and its insured.

¶ 13 We find none of these authorities supporting the proposition argued by AMI. On the other hand, there is clear authority that acts nearly identical to those alleged to have been committed by AMI and Prestige do provide a basis for a fraud-based consumer protection claim. In *O'Brien v. B.L.C. Insurance Co.*, 768 S.W.2d 64 (Mo.1989), the insurance company settled a claim with its insured as a total loss. The insurer then sold the vehicle to a salvage company but did not send the certificate to the Division of Motor Vehicles with the notation that it was a salvage vehicle, nor did it obtain a certificate in its own name prior to marketing the vehicle. *Id.* at 66. In that case, as herein, the vehicle was subsequently sold to a consumer, who discovered the true status of the vehicle and filed suit, based upon negligence and fraud, against the insurer and the purchaser from the insurer who rebuilt the vehicle. *Id.* at 66–67. The appellate court upheld a damages award against the defendants for compensatory and punitive damages.

¶ 14 AMI seems to acknowledge that it paid the owner of the vehicle for damages

---

**3.** In its brief, AMI claims oversight by the Oklahoma Tax Commission, apparently based upon that Commission's role in the licensing of automobiles. The Tax Commission has no general oversight over insurance companies and/or consumer fraud.

and took possession of the vehicle, and, therefore, that it was subject to the provisions of 47 O.S. Supp.1999 § 1111 which, in pertinent part, provides:

(B) Any insurance company that pays a total loss on a claim for any vehicle ... shall receive the certificate of title from the current holder of the certificate of title, shall detach the license plate from the vehicle, and shall return the license plate and the certificate of title to the [OTC] or a motor license agent with thirty (30) days from receipt of the certificate.... The [OTC] shall transfer ownership of a vehicle damaged by flooding or other occurrence to the insurer by an original title, salvage title, or junked title, as may be appropriate, based upon an estimate of the amount of loss submitted, by the insurer....

(C)(1) If an insurance company pays a claim for a loss which is less than a total loss but the cost of repairing the vehicle for safe operation on the highway exceeds sixty percent (60%) of the fair market value of the vehicle, or if any vehicle not insured is damaged to the extent that the cost of repair for safe operation on the highway exceeds sixty percent (60%) of the fair market value of the vehicle, any holder of the certificate of title for the vehicle shall return the certificate of title to the [OTC] or a motor license agent within thirty (30) days from receipt of payment for the loss.

(2) Upon receipt of the certificate, the [OTC] or motor license agent shall issue a salvage title for the vehicle....

¶ 15 Plaintiffs allege that AMI and Prestige, acting in concert, violated the statutory mandate regarding acquiring a salvage title, and those allegations have not been controverted. Therefore, for purposes of analysis of the propriety of the grant of summary judgment, we must assume AMI and Prestige guilty of violation of this law.

¶ 16 The Consumer Protection Act (CPA), at 15 O.S. Supp.1999 § 752, provides:

11. "Deceptive trade practice" means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral;

12. "Unfair trade practice" means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers....

The violation of Section 1111, with seemingly clear understanding and knowledge that the vehicle involved would later be sold to a consumer, seems to fall within the ambit of these defined wrongful practices.

¶ 17 The alleged acts also sound in fraud/deceit. They could be characterized as an intent to deceive a subsequent buyer of the automobile, by withholding the actual salvage status of the vehicle, causing a buyer to pay a higher purchase price to his detriment. *See* 76 O.S.1991 §§ 2 and 3. Although AMI argues the fraud claim was not pled with the necessary specificity, we hold that it was.

¶ 18 Likewise, a claim for negligence will also lie based upon these allegations, in the event that either AMI or Prestige maintains that its acts were not intentionally wrongful, such as an argument that the party did not know the automobile was likely to be repaired for resale, rather than being sold for salvage.

¶ 19 AMI also contends that, even if it might be liable in tort, Plaintiffs failed to demonstrate any loss. This assertion was based upon the details of Plaintiffs' settlement with Turnpike Ford. The *only* support in the record on appeal for that assertion are statements of counsel for AMI and Prestige made at the hearing on the motion to dismiss and one short response—"I guess not"—of Mrs. Conatzer in her deposition to some assumptions stated by AMI's counsel. That actual testimony in no way demonstrates that Plaintiffs sustained no losses because of the settlement with Turnpike Ford. Counsel did not question Mrs. Conatzer regarding other possible losses, including the inconvenience of being without an automobile, lost time

from employment, attorney fees,[4] or other damages that Plaintiffs might prove.

¶20 AMI also asserts that Plaintiffs "cancelled" their purchase contract with Turnpike Ford prior to having discovered the title defect. Thus, it contends the absence of a "salvage vehicle" title was not the proximate cause of Plaintiffs' damages, if any. However, we agree with the conclusion reached in *O'Brien*: "If the insured's agents had not violated statutory requirements that were well known to them [the] scheme would have been much more difficult, and perhaps, impossible of accomplishment." *O'Brien*, 768 S.W.2d at 68. Furthermore, not every intervening cause insulates the original negligent actor from liability. *Minor v. Zidell Trust*, 1980 OK 144, ¶7, 618 P.2d 392, 394; *Brodsky v. Atchison, Topeka & Santa Fe Ry.*, 1962 OK 284, ¶7, 368 P.2d 852, 854. When a cause combines with another act or omission to produce an injury or several causes operate to bring about the same result, each negligent actor may be liable for the harm that evolves. *Thompson v. Presbyterian Hosp., Inc.*, 1982 OK 87, ¶16, 652 P.2d 260, 264. We cannot say, as a matter of law, that the acts or omissions of other parties were sufficient to constitute a supervening cause that would negate any liability of AMI and/or Prestige.

¶21 We therefore conclude that Plaintiffs have stated claims for fraud/deceit, violation of the Consumer Protection Act, and negligence. Thus, dismissal of the action for failure to state a claim was error.

¶22 Plaintiffs also maintain the trial court erred in denying their motion for class certification. Reversal of a trial court's order denying certification requires a clear showing of abuse of discretion. *Mattoon v. City of Norman*, 1981 OK 92, ¶25, 633 P.2d 735, 740. The party who seeks certification has the burden of proving each of the requisite elements for a class action. *Davoll v. Webb*, 160 F.R.D. 142, 143 (D.Colo.1995), af-

firmed by 194 F.3d 1116 (10th Cir.1999) (citing *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir.1982)). Because Oklahoma and federal class actions are in all essential aspects the same, we gain guidance from federal cases. *Shores v. First City Bank Corp.*, 1984 OK 67, ¶5, 689 P.2d 299, 301. The issue on appeal is not whether the trial court could have certified a class but whether it was an abuse of discretion not to certify. *Boughton v. Cotter Corp.*, 65 F.3d 823, 827 (10th Cir.1995). An abuse of discretion occurs when a court has based its decision on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling. *Mann v. Reynolds*, 46 F.3d 1055, 1062 (10th Cir.1995).

¶23 The criteria for certification of class actions in the state of Oklahoma are set out in 12 O.S.1991 § 2023. Subsection (A) contains four requirements that must be met along with at least one of three additional requirements set out in subsection (B). The four requirements of subsection (A) are:

1. The class is so numerous that joinder of all members is impracticable;

2. There are questions of law or fact common to the class;

3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4. The representative parties will fairly and adequately protect the interests of the class.

¶24 Plaintiffs assert that over a thousand salvage cars were transferred from AMI to Prestige without compliance with the salvage vehicle title requirements of Oklahoma and suggest that most if not all those cars were again placed in the stream of commerce. This might establish the numerosity requirement. We also have no doubt that the Plaintiffs and their counsel would fairly and adequately protect the interests of the class. However, the class action analysis

---

4. Title 15 O.S. Supp.1999 § 761.1 addresses liability under the CPA:

A. The commission of any act or practice declared to be a violation of the Consumer Protection Act shall render the violator liable to the aggrieved consumer for the payment of actual damages sustained by the customer and costs of litigation including reasonable attorney's fees, and the aggrieved consumer shall have a private right of action for damages, including but not limited to, costs and attorney's fees. . . .

breaks down in regard to the commonality and typicality requirements.

¶ 25 First, the state laws applicable to each case may be dependent on the ultimate destination at which a vehicle is sold to consumers. While Plaintiffs suggest that some of the other cars transferred from AMI to Prestige were returned to Oklahoma and bought by Oklahoma purchasers, that statement is based on speculation. Thus, the commonality of applicable law is questionable. Further, and most problematic, the many factual variables that might have arisen in the chain of events cast doubt on the probability of substantially common facts, and even upon the probability that the claims or defenses of Plaintiffs are typical of the claims or defenses of the class. The circumstances are similar to those in the case of *Bunch v. K–Mart Corp.*, 1995 OK CIV APP 41, 898 P.2d 170, in which the court held that probably disparate facts, coupled with the need in a fraud claim of showing individual "reliance" of each plaintiff, rendered class certification erroneous.

¶ 26 Although we might have ordered class certification under the facts of this case, we do not find an abuse of the lower court's discretion because we find support in the record for the conclusion that Plaintiffs have not sufficiently demonstrated all four of the prerequisites for class certification. Therefore, we need not analyze the requirements of Section 2023(B), and the trial court's overruling of the motion for class certification must be affirmed.

¶ 27 The trial court's dismissal of the motion for certification is affirmed, as is the dismissal of Plaintiffs' claim based upon violation of the Unfair Trade Practices Act. The judgment dismissing all other claims is reversed and the cause remanded for further proceedings.

¶ 28 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

¶ 29 GOODMAN, C.J., Presiding, and REIF, J., concur.