Ronald L. LEWIS, Plaintiff

v.

HORACE MANN INSURANCE CO., Defendant

No. 1:03CV1281.

United States District Court, N.D. Ohio, Eastern Division.

Aug. 23, 2005.

J. Charles Ruiz-Bueno, Weltman, Weinberg & Reis, Ronald I. Frederick, Law Office of Ronald I. Frederick, Cleveland, OH, for Plaintiff.

Robert H. Eddy, III, Gallagher Sharp, Julie L. Juergens, Richard C.O. Rezie, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, for Defendant.

## ORDER

OLIVER, District Judge.

On February 20, 2001, Ronald Lewis ("Lewis") filed a civil action against Horace Mann Insurance Company ("Horace Mann"), among others, in the Cuyahoga County Court of Common Pleas. After the Court of Common Pleas dismissed one of the defendants for lack of personal jurisdiction, Lewis voluntarily dismissed Horace Mann and the other remaining defendants. On June 26, 2003, Lewis refiled the case in this court pursuant to 28 U.S.C. § 1332. Lewis seeks injunctive relief and to recover actual, statutory, and punitive damages from Horace Mann for an alleged violation of the Federal Motor Vehicle Information and Cost Savings Act (the "Federal Odometer Act" or "FOA"), 49 U.S.C. § 32701 *et seq.*, and for various torts which stem from Michigan Statute § 257 *et seq.* (the "Michigan Vehicle Code"). Currently pending before the court are: (1) Horace Mann's Motion for Reconsideration (ECF No. 64); (2) Lewis's Motion for Leave to Supplement Ronald Lewis's Affidavit (ECF No. 68); (3) Horace Mann's Motion to Strike Richard Diklich's Affidavit and portions of Ronald Lewis's Affidavit (ECF

No. 66); and (4) Horace Mann's Motion for Summary Judgment (ECF No. 56). For the reasons that follow, Lewis's Motion for Leave to Supplement is denied, Horace Mann's motion for reconsideration is denied, its Motion to Strike is granted in part and denied in part, and its Motion for Summary Judgment is granted in part and denied in part.

## I. FACTS

The following pertinent facts were derived from the pleadings and exhibits and are undisputed. In 1998, Horace Mann insured a 1998 Chevrolet Monte Carlo (the "Vehicle") in the state of Michigan. At that time, the Vehicle was owned by Douglas Kiewitt, who resided in Michigan. The odometer reading on Kiewitt's title was 58 miles. On December 23, 1998, the Vehicle was involved in a serious accident. At the time of the accident, the Vehicle's odometer read approximately 10,572 miles. Horace Mann hired Haller Appraisal Services ("Haller") to estimate the cost to repair the Vehicle. Haller's estimate was $13,620.25. Horace Mann then hired CCC Information Services ("CCC") to determine the value of the Vehicle had it not been in the accident. CCC determined the Vehicle's base value to be $18,150.00. Horace Mann added a six percent sales tax, $1,089.00, to the base valuation for a total of $19,239.00. Based on Haller's repair estimate and CCC's valuation, Horace Mann declared the Vehicle a total loss and paid Mr. Kiewitt $19,839.00, less a $500.00 deductible, as a settlement.

Horace Mann then arranged for the Vehicle to be transferred from a garage in Michigan, where it was kept after the accident, to Diehl Auto ("Diehl"), also in Michigan. Diehl paid Horace Mann $4,356.00 for the Vehicle, including a transportation fee. The Vehicle's title passed directly from Kiewitt to Diehl; Horace Mann neither obtained title in its name nor obtained a salvage title. It was Horace Mann's practice never to take title after paying total loss settlements, unless the vehicle had been stolen. (R. Zemba Dep. 58–59, ECF No. 57.)

Express Auto Auction ("Express") then purchased the Vehicle from Diehl at an auction in Michigan. Express made some repairs to the Vehicle and sold it at auction to Zemba Enterprises ("Zemba"), a car dealer in Cleveland, Ohio. At the auction, the Vehicle was marked with a yellow caution marker as a warning to buyers. Michael Zemba, the owner and buyer of Zemba Enterprises, states that he the only history he knew about the Vehicle when he bought it was that the hood had been repaired. (M. Zemba Dep. 59–60, ECF No. 58.) When Zemba became the owner, the Vehicle's odometer read 10,665 miles. After purchasing the Vehicle, Zemba made some small repairs. Lewis bought the Vehicle from Zemba in Cleveland, Ohio, around June 26, 1999, for $15,550.00 (taxes and filing fees included). At the time Lewis bought the Vehicle, the odometer read approximately 11,992 miles.

To assist him in deciding whether or not to purchase the Vehicle, Lewis asked the Zemba salesperson about the Vehicle's history, test drove it, and looked up its Blue Book price. The Vehicle's Blue Book value was between $18,000 and $19,000, well above Zemba's asking price. Lewis submits that the Zemba salesman told him the vehicle had never been in a wreck and was in great condition. (Lewis Aff. ¶ 4, ECF No. 65 Ex. 8.) On his test drives, Lewis noticed some small problems, but nothing severe. Despite doing some investigatory work, Lewis did not examine the Vehicle's title prior to making his purchase.

Lewis found out the Vehicle had been in a serious accident a short time after buying it. He took the Vehicle to a Chevy dealership to have some work done and while there, a dealership repair person

asked Lewis if he knew the car had been in a serious accident. Sometime thereafter Lewis filed the state lawsuit.

According to Michael D'Amico, a former sales representative from Zemba, dealers have an incentive not to get salvage titles, since the cars can typically sell for at least ten percent more without salvage title, and banks are more likely to finance their purchase. (D'Amico Dep. 40–41, ECF No. 65, Ex. 6.)

## II. NON–DISPOSITIVE MOTIONS

### A. Horace Mann's Motion for Reconsideration

■ Horace Mann seeks to have this court reconsider its January 18, 2005 Order (ECF No. 62), granting in part and denying in part Plaintiff's Motion for a Sixty–Day Continuance to Respond to Horace Mann's Motion for Summary Judgment Pursuant to Rule 56(f), ECF No. 61. In its January 18, 2005 Order, the court gave Plaintiff a brief extension to file and indicated that if Plaintiff needed additional time, he must indicate the specific information he needs to respond. Plaintiff filed his opposition without notifying the court of any additional information causing a delay. Since the motion for summary judgment has been fully briefed, Horace Mann's motion for reconsideration (ECF No. 64) is denied as moot. In so ruling, the court makes no determination as to whether or not Lewis made any misrepresentations to the court in seeking a Rule 56(f) continuance.

### B. Lewis's Motion for Leave to Supplement Ronald Lewis's Affidavit

■ Lewis seeks leave to supplement his Affidavit, in support of his Memorandum in Opposition to Summary Judgment, with a letter from BF Goodrich Credit Union ("Credit Union"). Credit Union financed Lewis's purchase of the Vehicle.

The substance of the letter is that Credit Union would not have financed the Vehicle, using the Vehicle as collateral, if the Vehicle had a salvage title. Lewis uses the letter to show the Vehicle's value was diminished when Horace Mann declared it a total loss, the pool of available buyers was smaller, and Horace Mann was involved in a scheme to defraud. (Pl.'s Opp'n Mem. at 41.) Horace Mann argues that the letter is inadmissible hearsay because it is an out of court statement made by another and offered for the truth of the matter asserted, see Fed.R.Evid. 801, and that the letter does not fit into any hearsay exception. See Fed.R.Evid. 803–807. This court agrees. See Mooney v. Cleveland Clinic Found., 184 F.R.D. 588, 590–91 (N.D.Ohio 1999) ("the court may not consider [hearsay] when ruling on a summary judgment motion") (relying on N. Am. Specialty Ins. Co. v. Myers, 111 F.3d 1273 (6th Cir. 1997)). If Lewis wanted to proffer the substance of this letter, the proper method would have been for the letter's author-Diane M. Cleavenger (assuming she was qualified to opine on the matter asserted)-to swear out an affidavit. Just as Lewis could not use this unsworn letter at trial in an attempt to establish a fact, he cannot use it at summary judgment to create a genuine issue of material fact. Fed. R.Civ.P. 56(e); see also Meserole v. M/V Fina Belgique, 736 F.2d 147, 149 (5th Cir. 1984) ("The unsworn letter is inadmissible on summary judgment") (citations omitted). Lewis's Motion for Leave to Supplement is denied. The court will not consider the Credit Union letter while deciding the pending Summary Judgment Motion.

### C. Horace Mann's Motion to Strike

Horace Mann moves this court to strike Richard Diklich's ("Diklich") affidavit and portions of Lewis's affidavit because neither complies with Federal Rule of Civil Procedure 56(e). Specifically, Horace

Mann asks the court to strike Diklich's Affidavit because the documents referenced therein are not attached, the affidavit fails to set forth how Diklich is qualified as an expert, and fails to show Diklich is competent to testify about the matters therein. With respect to Lewis's affidavit, Horace Mann moves the court to strike the portions of the affidavit that purport to authenticate documents because Lewis was not the custodian of those records and therefore does not have the personal knowledge to be competent to testify to their authenticity. In response, Lewis argues only that his affidavit should not be struck because it does not attempt to authenticate the documents; rather, it only represents that the documents are the same as they were when they were given to Lewis during discovery. Further, Lewis contends one of the documents, a certified title of transfer, is self authenticating; thus, Lewis was not required to authenticate it.

■ As indicated above, Fed.R.Civ.P. 56(e) sets forth the requirements for affidavits used in support of or in opposition to a motion for summary judgment. The rule provides that those affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). It is well-settled that an "[a]ffidavit that does not satisfy the requirements of Rule 56(e) is subject to a motion to strike." *Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F.Supp.2d 948, 954 (S.D.Ohio 2000) (noting that the three requirements set forth in Rule 56(e) are mandatory). Additionally, "[s]worn or certified copies of all papers or parts there of referred to in an affidavit shall be attached thereto or served therewith." Fed.R.Civ.P. 56(e). In a motion to strike, the moving party must specify the paragraphs of an affidavit to which it objects. *Ulmer v. Dana Corp.*,

200 F.Supp.2d 804, 812 (N.D.Ohio 2002) (finding that a moving party may not make generalized allegations and leave the court to divine precisely which statements in which affidavits fall within the parameters of the generalized allegations).

**1. Diklich's Affidavit**

■ Diklich's Affidavit is not in compliance with Rule 56(e). Nowhere in the affidavit, attached to it, or attached to Lewis's Opposition Motion, is any foundation laid explaining why Diklich "is competent to testify to the matters stated therein." Further, Lewis does not point to any place in the record where the court can find and evaluate Diklich's credentials. Accordingly, ¶¶ 2—8, and 10, where Diklich is testifying to what he observed while inspecting the Vehicle, fail because the court is not told how Diklich is a person experienced in body repair or otherwise qualified to render an expert opinion. As Diklich himself opines in ¶ 10, "any person experienced in body repair, during a reasonable inspection, would have noticed the type and extent of repair that I observed." Likewise, the remaining paragraphs of Diklich's Affidavit also fail to satisfy Rule 56(e) because Lewis does not assert how Diklich is competent to testify about: what type of parts are recommended in the repair industry (¶ 9); the effect a branded title would have on the value of a car (¶ 11); whether or not taxes should be considered as part of the Vehicle's actual cash value (¶ 12); supplements to estimates (¶ 13); or the Vehicle's fair market value (¶ 14). In addition, none of the nineteen documents listed in ¶ 1, which Diklich reviewed to prepare his opinions, are attached to the affidavit. *Id.* For these reasons, Horace Mann's Motion to Strike the Diklich Affidavit is well taken. Thus, the court will not consider any part of the Diklich Affidavit while deciding Horace Mann's Motion for Summary Judgment.

### 2. Lewis's Affidavit

██ Horace Mann's Motion to Strike the portions of Lewis's Affidavit that purport to authenticate materials Lewis received from Horace Mann during discovery is not well taken. Horace Mann contends there are three documents Lewis could not authenticate: (1) the Haller appraisal; (2) the CCC valuation; and (3) a title transferring the Vehicle from Express Auto to Zemba. (Def. Mot. to Strike 9, ECF No. 66.) As to the final document, it is a certified copy of an Ohio certificate of title, bearing the seal of the Cuyahoga County clerk of courts. (Pl. Opp. to Def. Mot. for Summ. J. Ex. 8, ECF No. 65.) Such a document is self-authenticating under Federal Rule of Evidence 902(4). With respect to the first two documents, these were each documents that were both provided to Plaintiff by Horace Mann during discovery **and** attached by Horace Mann to its motion for summary judgment. (ECF No. 56, Exs. A, B.) Under these circumstances, Horace Mann's argument that the Haller appraisal and CCC valuation are not authentic or cannot be authenticated by Lewis is utterly spurious and devoid of merit. Horace Mann's Motion to Strike Portions of the Affidavit of Lewis (ECF No. 66) is denied.

### III. HORACE MANN'S MOTION FOR SUMMARY JUDGMENT

Horace Mann moves this court to grant it summary judgment on all of Lewis's claims. Lewis's claims stem from allegations regarding Horace Mann's actions or omissions relating to automobile titles and the transfer of automobiles in the state of Michigan. Lewis asserts that Horace Mann was part of a scheme to defraud used vehicle purchasers, including himself. Lewis alleges Horace Mann's role in this scheme was to transfer vehicles, deemed total losses, from its customers to dealers that could repair the vehicles and then put them back in circulation. Horace Mann would transfer these vehicles to the dealers without having to put its name on the title and without having to obtain a scrap or salvage title from the state of Michigan by arranging the direct transfer between its insured and the dealer. These automobiles would therefore have clean, rather than branded, titles when they were eventually purchased by consumers. This alleged scheme injured the ultimate purchasers of these automobiles, such as Mr. Lewis, because the purchaser could not know the actual history of the vehicle. Thus, purchasers did not know what they were buying or how much it was really worth. Lewis alleges the result in his case was that he unknowingly purchased the Vehicle for more than it was actually worth.

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein . . . . The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported

as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Nonetheless, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. 2505.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989) (citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C.Cir.1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F.Supp. 1, 4 (S.D.Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

## B. Lewis's Federal Odometer Act Claim

Lewis asserts that Horace Mann violated the Federal Odometer Act ("FOA") when it did not obtain title in its name, when it did not obtain Kiewitt's signature on the title, and when it did not list the odometer mileage on the title. As proof, Lewis proffers the Vehicle's title from Horace Mann's claim file, which does not have the proper disclosures but does have a signature. (*See* Pl.'s Opp'n Mem. Ex. 2.) Lewis claims these acts show a general intent to defraud him with regard to the Vehicle's history. In response, Horace Mann contends that a civil plaintiff cannot recover under the FOA by showing a general intent to defraud; rather, the plaintiff must prove the defendant specifically intended to defraud the plaintiff about the mileage of the vehicle. To carry its initial burden of production, Horace Mann argues that Lewis fails to state a claim because Lewis never alleged that Horace Mann's failure to disclose was done with intent to defraud Lewis about the Vehicle's

mileage. Horace Mann then points to the lack of evidence in the record that would establish such an intent. (Def.'s Summ. J. Mem. at 7–8.) Further, Horace Mann points to undisputed evidence in the record that would prove it did not intend to defraud Lewis about the Vehicle's mileage. (Def.'s Summ. J. Mem. Ex. C at ¶ 9 "Request for Admissions".)

The Federal Odometer Act affords a private right of action against persons who violate any of the Act's provisions "with intent to defraud." 49 U.S.C. § 32710(a). The FOA's provisions set forth various disclosure requirements that a transferor must make when transferring a vehicle. For example, 49 U.S.C. § 32705(a)(1)(A) requires "a person transferring ownership of a motor vehicle [to] give the transferee [a] written disclosure ... of the cumulative mileage registered on the odometer." The Act also states:

> A motor vehicle the ownership of which is transferred may not be licensed ... unless the transferee, in submitting an application to a State for the title on which the license will be issued, includes with the application the transferor's title and, if that title contains ... a statement, signed and dated by the transferor, of the mileage disclosure required under subsection (a) of this section.

49 U.S.C. § 32705(b)(1). Further, 49 C.F.R. § 580.5(c), a regulation construing the Act, requires transferors "[i]n connection with the transfer of ownership of a motor vehicle," to "disclose the mileage to the transferee in writing on the title ...." The parties do not dispute that Horace Mann never took title in its name. Horace Mann does not offer any evidence to dispute Lewis's contention that Horace Mann failed to put the mileage on the title when transferring the Vehicle to Diehl. Thus, Lewis may be able to prove Horace Mann violated 49 U.S.C. § 32705(a)(1)(A), or § 32705(b)(1), or 49 C.F.R. § 580.5(c), or

some combination thereof by not listing the odometer's mileage on the Vehicle's title.

 Nevertheless, this is not sufficient to survive summary judgment because "without evidence that the defendant intended to defraud a plaintiff *with respect to a vehicle's mileage or odometer reading,* summary judgment is appropriate for the defendant as to claims made under the [Federal Odometer] Act." *Hunter v. Riverside Ford Sales, Inc.,* 2005 WL 1529541, *3 (E.D.Mich.2005); *see also Locascio v. Imports Unlimited, Inc.,* 309 F.Supp.2d 267 (D.Conn.2004); *Mayberry v. Ememessay Inc.,* 201 F.Supp.2d 687 (W.D.Va.2002); *Cf. Moss v. Farr Motor Co., Inc.,* 82 F.3d 418, 1996 WL 166734, *1–2 (6th Cir.1996) (while upholding summary judgment in favor of defendant, the Sixth Circuit held "[l]iability would require that (1) the mileage on the odometer had been false, and (2) defendant knew it.").

In *Hunter,* the plaintiff-transferee alleged the defendant-transferor violated the Federal Odometer Act by not making the required disclosures on the title. The court granted summary judgment in favor of the defendant because the plaintiff failed to offer any evidence the defendant misled him about the vehicle's mileage since "it [was] undisputed the Odometer Statement signed by the plaintiff correctly disclosed the mileage of the vehicle." *Hunter,* 2005 WL 1529541 at *2. In reaching its conclusion, the *Hunter* court rejected the proposition that "general intent to defraud, which may be unrelated to a car's mileage/odometer, [ ] is sufficient to satisfy that requirement of the Act." *Id.* at *3; *see Salmeron v. Highlands Ford Sales, Inc.,* 223 F.Supp.2d 1238 (D.N.M.2002); *Yazzie v. Amigo Chevrolet, Inc.,* 189 F.Supp.2d 1245 (D.N.M.2001). Instead, the *Hunter* court concluded that the majority rule, which requires intent to defraud about a

vehicle's mileage, was consistent with the statute's purpose. This court agrees.

■ The Federal Odometer Act's stated purpose is: "(1) to prohibit tampering with motor vehicle odometers; and (2) to provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers." 49 U.S.C. 32701(b). The plain language of the statute makes clear that "Congress's intent in passing the Act was to prevent consumers from being defrauded about the mileage of vehicles they were looking to purchase." *Locascio*, 309 F.Supp.2d at 270. This Act, then, is not designed to protect automobile purchasers from generally being defrauded about the state of a vehicle's title as Lewis contends. Thus, for Lewis to defeat Horace Mann's Summary Judgment Motion on this claim, which has been properly supported, Lewis must come forward with some evidence which would raise a genuine issue of material fact about whether Horace Mann intended to defraud Lewis *about the Vehicle's mileage.* This standard is in line with the purpose of the statute because "[a] contrary holding would ascribe to Congress the unlikely, and unsupported, intent of allowing the [Federal] Odometer Act to serve as a vehicle for plaintiffs to bring numerous state law claims into federal court ...." *Id.* at 270–71; *see also Hunter,* 2005 WL 1529541 *3 (quoting *Locascio* ); *Hamilton v. O'Connor Chevrolet, Inc.,* 2004 WL 1403711, *9 (N.D.Ill.2004) (quoting *Locascio* ).

■ Lewis has failed to meet this standard. Horace Mann satisfied its burden of production by pointing to undisputed evidence in the record which established that it did not intend to defraud Lewis about the Vehicle's mileage. Specifically, Horace Mann points out that Lewis admitted the Vehicle's mileage was never misrepresented to him. (Def.'s Summ. J. Mem. Ex. C at ¶ 9 "Request for Admissions".) Further, Horace Mann pointed to the lack of

evidence in the record that would establish it had violated the Act with intent to defraud Lewis about the Vehicle's mileage. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Thus, just as summary judgment was appropriate in *Hunter* (where it was undisputed that the mileage was not misrepresented to the plaintiff), summary judgment in favor of Horace Mann is appropriate. *See also Locascio,* 309 F.Supp.2d at 271 (denying relief under the Act when defendant failed to provide plaintiff with the title because plaintiff "has not shown that the defendant intended to defraud her-or that she was ever misinformed-about the mileage of the vehicle she purchased."); *Compton v. Altavista Motors, Inc.,* 121 F.Supp.2d 932, 942 (W.D.Va.2000) (granting summary judgment for defendant even though defendant did not put mileage on title because plaintiff "set forth no evidence that [defendant's] alleged violation ... was in any way motivated by an intent to defraud her with regard to the accuracy of the mileage of her automobile.").

Lewis does not offer any evidence to the court that would demonstrate Horace Mann intended to defraud him with respect to the Vehicle's mileage; nor does Lewis point to anything already in the record that would raise a material issue of fact about whether Horace Mann intended to defraud him about the Vehicle's mileage. In fact, Lewis does not contend the Vehicle's mileage is inaccurate. Moreover, he admits that the mileage was never misrepresented to him. Accordingly, Lewis has failed to make out a *prima facie* case with respect to this claim. There is no genuine issue of material fact that Horace Mann did not intend to defraud Lewis *about the Vehicle's mileage.* The court, therefore, concludes that Horace Mann did not violate the Federal Odometer Act. Thus, Lewis's Federal Odometer Act claim fails as a matter of law. The court grants

Horace Mann's Motion for Summary Judgment on Lewis's Federal Odometer Act claim.

### C. Lewis's Tort Claims

Lewis's remaining claims are negligence per se (based on the Federal Odometer Act and various Michigan Vehicle Code provisions), negligence, negligent misrepresentation, and fraud. Further, Lewis asks this court to grant him punitive damages. Before the court can address these claims on their merits, however, it must make two preliminary rulings.

As indicated above, this is a re-filed action. In the first action, the Cuyahoga County Court of Common Pleas Judge, Nancy R. McDonnell, in a one sentence Journal Entry, ordered that Michigan law would be applied to all of Lewis's state law claims. (Def.'s Summ. J. Mem. Ex. D.) Horace Mann contends that Michigan law should, and must be, applied because the issue is *res judicata*. Lewis argues that Ohio law should be applied and posits that the choice of law issue is not precluded. Thus, the court must first determine if the choice of law issue is *res judicata*; then, if it is not, the court must determine which state's substantive law will apply to Lewis's tort claims.

### 1. Preliminary Issues

#### a. *Res Judicata*

Horace Mann argues that whether Michigan or Ohio substantive law should be applied to Lewis's remaining claims is *res judicata* because the issue has already been adjudicated between theses two parties by Judge McDonnell. In response, Lewis argues that the parties are not precluded from arguing the choice of law issue because a voluntary dismissal of an action dissolves any interlocutory orders entered prior to dismissal; accordingly, those previously entered orders cannot be *res judicata*. (Pl.'s Opp'n Mem. at 6.) This court agrees.

■ The U.S. Supreme Court has held that "a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (citations omitted) (concluding that Ohio's *res judicata* law principles determined the preclusive effect of the state court judgment); *see also Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrecoverable Trust*, 410 F.3d 304 (6th Cir.2005) (quoting *Migra*). Accordingly, the court must use Ohio's claim preclusion law to determine the preclusive effect of Judge McDonnell's order.

■ Under Ohio's claim preclusion, or *res judicata*, law, "an existing final judgment rendered upon the merits, without fraud or collusion by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue, as to the parties and their privities in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." *Gargallo v. Merrill Lynch*, 918 F.2d 658, 661 (6th Cir.1990) (quoting *Norwood v. McDonald*, 142 Ohio St. 299, 52 N.E.2d 67, 70 (1943)). Nevertheless, in Ohio, a "plaintiff's voluntary dismissal does not operate as an adjudication on the merits . . . ." *Hensley v. Henry*, 61 Ohio St.2d 277, 400 N.E.2d 1352, 1353 (1980) (internal quotations omitted). Nor does a decree or order that does not completely adjudicate the rights and liabilities of the parties operate as final judgment; a decree or order that does not fully dispose of the cause of action is an interlocutory order. *See Kerosene Heater Lamp Co. v. Monitor Oil Stove Co.*, 41 Ohio St. 287, 292–3 (1884) ("when a cause is retained . . . for the purpose of ascertaining a material fact, the decree is interlocutory only, and does not

become final until the whole merits of the cause have been disposed of and nothing remains for the further action of the court.") (citations omitted).

 In addition, under Ohio law, a voluntary dismissal, otherwise than on the merits, leaves the parties in the same position as if the action had never been commenced. *Cent. Mut. Ins. Co. v. Bradford–White Co.*, 35 Ohio App.3d 26, 519 N.E.2d 422, 424 (1987) (citations omitted). Accordingly, in Ohio, "[w]here an action or proceeding is dismissed without prejudice, rulings preceding the final judgment or decree of dismissal are, as a general proposition, not capable of becoming *res judicata.*" *DeVille Photography Inc. v. Bowers,* 169 Ohio St. 267, 159 N.E.2d 443, 447 (1959) (citations omitted); *see also Cent. Mut. Ins. Co.*, 519 N.E.2d at 424 ("Under Ohio law, the dismissal of an action without prejudice, whether voluntary or involuntary, dissolves all orders rendered by the trial court during the pendency of the action.") Thus, the "[p]laintiff then remains free to commence another action against the defendant raising the same issues." *Hall v. Gibson Greetings, Inc.,* 971 F.Supp. 1162, 1165 (N.D.Ohio 1997) (relying on *Board of Health v. City of St. Bernard,* 19 Ohio St.2d 49, 249 N.E.2d 888 (1969); *Cent. Mut. Ins. Co.*, 519 N.E.2d at 424.).

 The choice of law issue is not precluded, or *res judicata.* Lewis voluntarily dismissed the earlier action. (Def.'s Summ. J. Mem. at 7.) Judge McDonnell's journal entry was an interlocutory order since it did not completely dispose of the cause by adjudicating the rights and liabilities of the parties. When Lewis voluntarily dismissed the first suit, Judge McDonnell's order granting Horace Mann's motion to have Michigan law applied was dissolved. Thus, Lewis is free to raise the choice of law issue again. This court, therefore, will decide whether Michigan's or Ohio's substantive law will apply to Lewis's remaining claims.

#### b. Choice of Law

The parties disagree about which state's substantive law should be applied when analyzing Lewis's remaining state law claims. Lewis argues it should be Ohio; Horace Mann contends it should be Michigan. Both reach their conclusions based on their respective analyses of the general torts section of the Conflict of Laws Restatement. Restatement (Second) of Conflict of Laws § 145 (1971). Further, the parties did not analyze each claim separately; they conducted one joint analysis for all the claims. The parties do at least agree the court should use Ohio choice of law rules to determine whether Michigan or Ohio substantive law will control.

 There is well settled principle that " 'federal courts sitting in diversity must apply the choice-of-law principles of the forum' " in which it sits. *Macurdy v. Sikov & Love, P.A.,* 894 F.2d 818, 820 (6th Cir.1990) (citations omitted). In *Morgan v. Biro. Mfg. Co.,* 15 Ohio St.3d 339, 474 N.E.2d 286, 288–89 (1984), the Ohio Supreme Court held that *lex loci delicti,*[1] the traditional rule, although still available, was no longer to be used to automatically determine which state's law would apply. *Id.* at 288. Rather, "[o]ther interests of the states involved within the controversy must be thoroughly analyzed." *Id.* The court then expressly adopted the "theory stated in the Restatement of the Law of Conflicts." *Id.* at 288–89; *see also Macurdy,* 894 F.2d at 820. In applying the Restatement, the court must look to the re-

---

1. "In the area of tort law prior to 1971, it is well established in [Ohio] that the substantive law of the place where the injury occurred was controlling under the rule of *lex loci delicti.*" *Morgan,* 474 N.E.2d at 288 (citations omitted)

statement section that corresponds to each claim. *See Macurdy,* 894 F.2d 818 (determining which state's law applied to the plaintiff's claims using different Restatement sections; for plaintiff's fraud claim the court used the Restatement section on fraud and misrepresentation (§ 148) and used the section on contracts (§ 188) to analyze the breach claim). Finally, one state's law need not be applied to all of the claims. *See Cheatham v. Thurston Motor Lines,* 654 F.Supp. 211, 215 (S.D.Ohio 1986) ("Tennessee law will apply to Plaintiffs' negligence claim .... Ohio law will apply to the products liability claims.").

Although the Restatement does not have a section specifically on negligence per se, § 157 addresses the violation of a statute. Restatement (Second) of Conflict of Laws § 157 (1971). Pursuant to § 157, courts should apply § 145 to "determine the standard of care by which the actor's conduct shall be judged." *Id.* at (1). However, § 157 also counsels that while the court should apply § 145, the result will be that "[t]he applicable law will usually be the local law of the state where the injury occurred." *Id.* at (2). The Restatement (Second) of Conflict of Laws § 145(1) directs courts to determine which state has the most significant relationship to the occurrence and the parties, taking into account:

> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Since § 145 is the applicable section for general negligence claims as well, the court's subsequent analysis will determine which state's rule of law will be applied to Lewis's negligence per se and negligence claims.

■ Applying § 145 does not overwhelmingly point to either state as having the most significant relationship to the occurrence and the parties: (a) Lewis's injury, paying more than the Vehicle was actually worth, occurred in Ohio; (b) Horace Mann, by failing to comply with the statutes or by failing to properly title the Vehicle, caused the injury in Michigan; (c) Lewis's domicile was and is Ohio and Horace Mann was and is incorporated in Illinois; and (d) outside of this litigation, the parties admit they have no relationship. By having more of the above contacts, and especially by being the place of the injury, Ohio seems to have a more significant interest than Michigan. Moreover, § 145 also directs the court to examine the general principles enumerated in § 6. These principles also weigh in favor of applying Ohio's law to Lewis's negligence per se and negligence claims. *See Morgan,* 474 N.E.2d at 289 (setting out the four contacts listed in § 145(2) to take into account and "(5) any factors under Section 6 which the court may deem relevant to the litigation."). Restatement (Second) of Conflict of Laws § 6(2) provides:

> When there is no [statutory] directive, the factors relevant to the choice of the applicable rule of law include
>
>> (a) the needs of the interstate and international systems,
>>
>> (b) the relevant policies of the forum,
>>
>> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>>
>> (d) the protection of justified expectations,
>>
>> (e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of law to be applied.

Michigan does have an interest in regulating the conduct that takes place within its borders and in ensuring that its laws are obeyed. Further, and to a limited extent, entities in Michigan should be able to rely on being held to Michigan's standards when deciding how to conduct themselves. Ohio, on the other hand, has an interest in protecting its citizens from being injured. Ohio also has an interest in ensuring that Michigan's laws are obeyed since doing so will help prevent its citizens from being injured within its borders. Further, Lewis, a resident of Ohio, injured in Ohio, and seeking redress in an Ohio court, should justifiably be able to expect that Ohio's law will apply. Under these circumstances, Ohio has the most significant relationship. The application of Ohio's substantive law will best protect these interests because Ohio subscribes to the negligence per se doctrine, *see Hernandez v. Martin Chevrolet, Inc.,* 72 Ohio St.3d 302, 649 N.E.2d 1215, 1216 (1995), whereas Michigan does not. *See Zeni v. Anderson,* 397 Mich. 117, 243 N.W.2d 270 (1976). Thus, Michigan's laws regulating conduct within its borders will still have effect even if Ohio's law is applied. Accordingly, the court finds that Ohio's substantive law is applicable to Lewis's negligence per se and negligence claims.

The Restatement (Second) of Conflict of Laws § 148 governs Lewis's negligent misrepresentation and fraud claims. *Macurdy,* 894 F.2d at 820–21. Further, because the representations and reliance did not take place in the same state, *see* Restatement (Second) of Conflict of Laws § 148(1), the court will apply § 148(2). Restatement (Second) of Conflict of Laws § 148(2) provides:

When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

(b) the place where the plaintiff received the representations,

(c) the place where the defendant made the representations,

(d) the domicil, residence, nationality, place of incorporation and place of business or the parties,

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

The application of the factors listed in this section dictate that Ohio law must be applied to Lewis's fraud and negligent misrepresentation claims: (a) if Lewis acted in reliance upon Horace Mann's representations, he did so in Ohio; (b) Lewis received the representations, if at all, in Ohio; (c) Horace Mann made representations, if at all, in Michigan; (d) as laid out above, Lewis's domicile was and is Ohio, whereas Horace Mann was and is incorporated in Illinois; (e) the Vehicle was located in Ohio at the time Lewis purchased or entered into a transaction for it; and (f) Lewis was to pay for the Vehicle under the contract he was allegedly induced to enter by the representation in Ohio. In addition to hav-

ing more contacts, Ohio has the more important contacts. *See* Restatement (Second) of Conflict of Laws § 148 cmt. j (1971) ("If any two of the above-mentioned contacts, apart from the defendant's domicil, state of incorporation or place of business, are located wholly in a single state, this will usually be the state of the applicable law with respect to most issues."). Accordingly, the court concludes that Ohio's substantive law will also be applied to Lewis's fraud and negligent misrepresentation claims.

## 2. Lewis's Negligence Per Se Claims

Lewis alleges that Horace Mann violated the Federal Odometer Act, 49 U.S.C. § 32701 *et seq.*, and the Michigan Vehicle Code provisions 257.233a and 257.217c. Lewis further contends that by violating these statutes Horace Mann was negligent as a matter of law, or negligent per se. Horace Mann responds by arguing that it did not violate the statutes, and, even if it did, the violations did not cause Lewis's injury.

In Ohio, "[w]here a statute does not expressly provide for civil liability, the question of whether violation of the statute constitutes negligence per se depends on the enactment itself." *Mussivand v. David,* 45 Ohio St.3d 314, 544 N.E.2d 265, 272 (1989) (citation omitted). Accordingly, "[i]n order to determine whether a violation of [a statute] constitutes negligence per se, [courts] must first determine whether [the statute] was intended to affect the duties owed for the safety and protection of others." *Hernandez,* 649 N.E.2d at 1216. Courts must make this determination because the negligence per se doctrine is premised upon the idea that "the statute serves as a legislative declaration of the standard of care of a reasonably prudent person applicable in negligence actions. Thus, the reasonable person standard is supplanted by a standard of care established by the legisla-

ture." *Sikora v. Wenzel,* 88 Ohio St.3d 493, 727 N.E.2d 1277, 1280–81 (2000) (citation and internal punctuation omitted). Therefore, "where a legislative enactment imposes upon a person a specific duty for the protection of others, his failure to observe that duty constitutes negligence per se." *Hernandez v. Martin Chevrolet, Inc.,* 72 Ohio St.3d 302, 649 N.E.2d 1215, 1216 (1995); *see also Sikora,* 727 N.E.2d at 1280 ("[W]here a statute sets forth a positive and definite standard of care whereby a jury may determine whether there has been a violation thereof by finding a single issue of fact, a violation of that statute constitutes negligence per se.") (citations and internal punctuation omitted).

When a defendant has violated such a statute, "the plaintiff will be considered to have conclusively established that the defendant breached the duty that he or she owed to the plaintiff." *Id.* Nevertheless, "[n]egligence per se ... is not equivalent to a finding of liability per se because the plaintiff will also have to prove proximate cause and damages." *Id.* at 1281 (citations and internal punctuation omitted); *see also Hernandez v. Martin Chevrolet, Inc.,* 72 Ohio St.3d 302, 649 N.E.2d 1215, 1216 (1995) ("Negligence per se decreases the elements that a plaintiff must prove in a negligence action.... Thus a plaintiff's case is significantly aided if negligence per se is established.").

On the other hand, "where there exists a legislative enactment expressing for the safety of others, in general or abstract terms, a rule of conduct, negligence per se has no application and liability must be determined by the application of the test of due care as exercised by a reasonably prudent person under the circumstances of the case." *Mussivand,* 544 N.E.2d at 272 (citing *Eisenhuth v. Moneyhon,* 161 Ohio St. 367, 119 N.E.2d 440 (1954)); *see also Lester v. John R. Jurgen-*

*sen Co.,* 19 Ohio Misc. 119, 400 F.2d 393, 396 (6th Cir.1968) ("It is well settled in Ohio that when a statute expresses a rule in general or abstract terms negligence per se has no application and that in such a case liability is determined by the usual test of reasonable care."). Thus, when one violates a statute that only proscribes a rule of conduct in general terms, such violation does not constitute negligence per se. *See, e.g., Westervelt v. Rooker,* 4 Ohio St.3d 146, 447 N.E.2d 1307, 1309 (1983) (holding that a violation of Ohio Revised Code 4511.28 did not amount to negligence per se because "the applicable statute does not allude to the commission or omission of any specific act."). Since negligence per se is not available to a plaintiff who relies on a statute that expresses a rule of conduct in general terms, "proof will be necessary that the defendant failed to act as a reasonably prudent person under like circumstances." *Sikora,* 727 N.E.2d at 1280.

### a. The Federal Odometer Act

■ As explained above, for a plaintiff to establish negligence per se the defendant must have violated a statute that imposes a specific duty. Key to a finding of negligence per se, of course, is that the defendant violated the statute. If, however, the statute is not violated, then the plaintiff does not state a negligence per se action, even if the statute imposes a specific duty, because that duty would not have been breached. Accordingly, since the court concluded in III.B that, as a matter of law, Horace Mann did not violate the Federal Odometer Act, Lewis's negligence per se claim under this Act must also fail as a matter of law. The court, therefore, grants Horace Mann summary judgment on this claim.

### b. Michigan Vehicle Code § 257.233a

Michigan Vehicle Code § 257.233 a is Michigan's "Odometer Act." As with the Federal Odometer Act, Michigan's law also requires the transferor to make various disclosures to the transferee. *See* Mich. Comp. Laws § 257.233a(1)(a)-(h). One of these required disclosures is "[t]he odometer reading at the time of the transfer." *Id.* § 257.233a(1)(a). Further, Michigan's Act also has section that expressly prohibits odometer tampering. *See id.* § 257.233a(6). Finally, Michigan's Odometer Act, as does the Federal Odometer Act, provides for civil liability when "[a] person, *with intent to defraud,* violates any requirement under subsections (1) or (6)." *Id.* § 257.233a(15) (emphasis added). Lewis contends, as he did under his Federal Odometer Act claim, that Horace Mann violated this law by not putting the Vehicle's mileage on its title when it arranged its transfer to Diehl. He further contends that this alleged violation makes Horace Mann negligent per se.

■ The application of the negligence per se doctrine is available to Lewis for this claim because the law provides for civil liability and "imposes upon a person a specific duty for the protection others." *Hernandez,* 649 N.E.2d at 1216. For Horace Mann to be negligent per se, Lewis must show Horace Mann violated the statute by not disclosing the odometer reading on the title with intent to defraud. To be granted summary judgment on this claim, Horace Mann must show that it is undisputed it did not violate the law. Neither party disputes that Horace Mann did not disclose the mileage on the title when it arranged for the Vehicle's transfer to Diehl. (*See* Pl.'s Opp'n Mem. Ex. 2.) There is no evidence, as explained above in III.B, that Horace Mann intended to defraud Lewis about the Vehicle's mileage when it failed to make this disclosure. Thus, if § 257.233a's intent to defraud requirement is the same as its federal counterpart, then Lewis's claim must fail. Thus, the dispositive issue of this claim is

whether or not Michigan Vehicle Code § 257.233a requires an intent to defraud *regarding the vehicle's mileage* as opposed to a general intent to defraud.

This appears to be an issue of first impression. *See Hunter,* 2005 WL 1529541 at *4 (declining to exercise supplemental jurisdiction when faced with this exact issue because "the remaining state law claims ... present, to some extent, novel or complex issues.") (citation and internal punctuation omitted). The only case either party cites which interprets this statute is *Whitcraft v. Wolfe,* 148 Mich.App. 40, 384 N.W.2d 400 (1985). Horace Mann argues from *Whitcraft* that § 257.233 a requires intent to defraud regarding a vehicle's mileage. The court disagrees that *Whitcraft* clearly stands for that proposition. The *Whitcraft* court was deciding a different issue; as it pertains to § 257.233a, it held that "failure to comply with the odometer statute requirements merely renders the transaction voidable by the purchaser." *Id.* at 406. The court did conclude, however, that "[t]he purpose of the odometer statute requirements is to prevent fraud upon the buyer and it only indirectly concerns the ownership transfer." *Id.* This case does not support Horace Mann's position because it does not directly address the issue of what intent is required to violated the statute.

However, the organization and language of the statute does indicate a plaintiff must show the defendant intended to defraud him about the vehicle's mileage to recover under this law. First, § 257.233a(15) provides for civil liability when "[a] person, with intent to defraud, violates any requirement under subsections (1) or (6)." Although subsection (1) does require some disclosures not related to mileage names and address of the transferor and transferee, etc., most of the subsection is concerned with vehicle odometer readings. Also, subsection (6) deals entirely with ve-

hicle odometer readings; specifically, subsection (6) is concerned with odometer tampering. The theme of the entire section is mileage and odometer readings. In fact, § 257.233a's title is "Transfer of title or interest in vehicle; disclosure of odometer mileage. As *Whitcraft* explained, '[t]he purpose of the odometer statute requirements is to prevent fraud upon the buyer and it only indirectly concerns the ownership transfer.'" 384 N.W.2d at 406. By organizing § 257.233a so that the focus of the section is on odometer readings and mileage, the intent of the Michigan Legislature was for civil liability to ensue only when a defendant intended to defraud a plaintiff regarding a vehicle's mileage. Further telling of such legislative intent is that the civil liability provision is specifically located in the odometer section, as opposed to being its own section providing for civil liability if any Michigan Vehicle Code sections were violated with intent to defraud. Finally, this interpretation is not only the most logical, but it does not produce an absurd or unreasonable result: if a party feels that it has been injured by another's fraud pertaining to something other than the mileage of the vehicle in a transaction, then that injured party can still seek redress by bringing a common law fraud claim. *See Holtzlander v. Brownell,* 182 Mich.App. 716, 453 N.W.2d 295, 298 (1990) (relying on *Joy Mgmt. Co. v, Detroit,* 176 Mich.App. 722, 440 N.W.2d 654 (1989)) ("Statutes are to be construed so as to avoid absurd or unreasonable consequences."). The court thus concludes that in order for civil liability to attach under Michigan Vehicle Code § 257.233a, a plaintiff must show that a defendant violated the statute with intent to defraud him about the vehicle's mileage.

■ Having so concluded, the court must grant Horace Mann summary judgment on this claim because it is undisputed

that Horace Mann did not intend to defraud Lewis about the Vehicle's mileage; thus, Lewis's claim fails as a matter of law. The court grants Horace Mann summary judgment for this claim.

### c. Michigan Vehicle Code § 257.217c

Michigan Vehicle Code § 257.217c is Michigan's salvage title statute. Its purpose is to ensure that certain vehicles are properly designated with either salvage or scrap titles so that adequate notice is given to purchasers of rebuilt vehicles. § 257.217c(1). The court finds that although § 257.217c does not expressly provide for civil liability, the negligence per se doctrine is available for this claim under Ohio law. Further, the court finds summary judgment is inappropriate because Plaintiff has put forth facts that, if believed, could lead a jury to conclude that Defendant's negligence per se caused Plaintiff's damages.

### i. Duty

The court must first evaluate whether the negligence per se doctrine is available for this claim, by determining whether this law was intended to affect duties owed for the safety and protection of others. See Hernandez, 649 N.E.2d at 1216. The titling statute imposes a duty on insurance companies to obtain a salvage title under certain circumstances.

(a) If the insurance company acquires ownership of the vehicle through payment of a claim, the owner of the vehicle shall assign the certificate of title to the insurance company which shall do all of the following:

 (i) Surrender a properly assigned certificate of title to the secretary of state.

 (ii) If the estimated cost of repair, including parts and labor, is equal to or more than 75% but less than 91% of the predamaged actual cash value of the vehicle, apply for a

salvage certificate of title ... The insurance company shall not sell the vehicle without first receiving a salvage or scrap certificate of title, which shall be assigned to the buyer.

Mich. Comp. Laws § 257.217c(2)(a). The salvage title requirement applies even if "after payment of a total loss claim the insurance company permits the owner of the vehicle to retain ownership." Id. at (2)(b). Chapter 257 of Michigan's Compiled Laws is, among other things, "[a]n act to provide for registration, titling, sale, transfer, and regulation of certain vehicles... to provide penalties and sanction for a violation of this act." Mich. Comp. Laws § 257.1. The extensive requirements of § 257.217c exist so that "adequate notice is given to a transferee or lessee of a rebuilt salvage vehicle of that vehicle's prior designation as a salvage vehicle." § 257.217c(1). This is not a law that only expresses a rule of conduct "in general or abstract terms." See Mussivand, 544 N.E.2d at 272. It provides specific details to guide the conduct of insurance companies, and insurance companies have no discretion about when to comply. See Mich. Comp. Laws § 257.217c(2)(a) ("shall do all of the following"). Therefore, under Ohio law, the negligence per se doctrine is available to Lewis for this claim.

### ii. Breach

The next step is to determine whether Horace Mann breached its duty in the instant case. Lewis contends that the Vehicle's repair estimate was over 75% of the Vehicle's predamaged actual cash value, because Haller's damage estimate ($13,620.25) divided by CCC's valuation ($18,150.00) yields 75.04%. Since Horace Mann did not then obtain a salvage title, according to Lewis, it breached its duty. Horace Mann contends the repair estimate was less than 75% of the Vehicle's actual cash

value, because it adds tax into the actual cash value figure. Viewed in this way, the repair value is only 70.79% of the Vehicle's ACV, and thus less than the 75% required to trigger the salvage title requirement. The parties thus dispute whether tax is included in actual cash value.

The court concludes that the statutory definition of actual cash value ("ACV") does not include tax. The statute defines ACV as:

> For the purpose of this section, "actual cash value" means the retail dollar value of a vehicle as determined by an objective vehicle evaluation using local market resources such as dealers or want ads or by an independent vehicle evaluation or vehicle appraisal service or by a current issue of a nationally recognized used vehicle guide for financial institution appraisal purposes in this state.

§ 257.217c(25). The plain language of this statute does not contemplate the addition of taxes. Retail prices at stores do not typically include tax; rather, sales tax is added when the item is purchased. *See, e.g., D.H. Holmes Co. v. McNamara*, 486 U.S. 24, 28, 108 S.Ct. 1619, 100 L.Ed.2d 21 (1988) ("tax . . . is calculated on the retail price"); *United States v. America Chicle Co.*, 256 U.S. 446, 41 S.Ct. 548, 65 L.Ed. 1041 (1921) (amount of tax is fixed by retail price). Defendant used a CCC vehicle appraisal which itself listed the "local market value" as $18,150 and did not include tax. (ECF No. 65, Ex. 4 at 3.) Defendant's arguments to the contrary are not well taken. Defendant contends that the definition of ACV means "replacement value" and that tax is included in replacement value. However, in those sections of the Michigan code where "actual cash value" means "replacement value," the statute defines "actual cash value" as such. *Compare* MCL § 500.1605(a) (defining "actual cash value" not in terms of retail but as "the cost of replacing damaged or de-stroyed property with comparable new property, minus depreciation and obsolescence") *with* MCL § 257.217c(25) (defining "actual cash value" as "the retail dollar value of a vehicle as determined by an objective vehicle evaluation"). Thus, ACV is defined differently in different areas of the Michigan statutes. The court finds alternative definitions from other areas of the statutes inapplicable. Moreover, the cases Defendant cites are from jurisdictions outside Michigan and address statutes from outside Michigan, each of which defines ACV differently. *See, e.g., Ghoman v. New Hampshire Ins. Co.*, 159 F.Supp.2d 928 (N.D.Tex.2001). The only relevant definition is the one in § 257.217c. That definition does not include tax. Therefore, Horace Mann breached its statutory duty to obtain a salvage title by including tax in the calculation.

### iii. Causation

A breach, however, is not alone sufficient to establish liability; "negligence per se . . . is not a finding of liability per se because the plaintiff will also have to prove proximate cause and damages." *Id.* at 1281. Defendant contends that Lewis's claim must fail because he fails to prove causation. Specifically, Defendant argues that since Lewis admits he never looked at the Vehicle's title before the purchase, the failure to obtain a salvage title could not have caused Plaintiff's damage. Even if Horace Mann had obtained a salvage title and not been negligent per se, Horace Mann contends, Lewis still would have been harmed because he never looked at the title. Additionally, Defendant argues that it was Zemba's intervening misrepresentation that actually caused Plaintiff's damage, and absolves Defendant of liability. Plaintiff responds that although he did not examine the title:

> [i]f Horace Mann had obtained a title in its name and/or obtained a salvage title,

any subsequent purchaser of the car would have had the knowledge that Horace Mann chose not to disclose and would have had the opportunity and obligation of passing that knowledge on the [sic] any subsequent purchaser of the vehicle.

(Pl. Opp. to Def. Mot. for Summ. J. 5–6, ECF No. 65.) For the reasons below, the court finds Plaintiff's argument well taken, and finds that no intervening act absolved Defendant of liability.

In *Conatzer v. American Mercury Insurance Company*, an Oklahoma state court found itself confronted with very similar factual circumstances to the instant case. 15 P.3d 1252 (Okla.Civ.App.2000). In *Conatzer*, an insurance company paid an insurance claim on a wrecked car, took possession without obtaining salvage title, and sold the car to an auto broker. The auto broker subsequently sold the car to a used car dealer, who sold the car to the plaintiff consumer without telling the consumer about the vehicle's history. After learning the car had been in an accident, the consumer sued the insurance company for negligence and fraud, alleging that it had engaged in "title laundering." *Id.* at 1254. The appellate court reversed the trial court's dismissal of the plaintiff's claims, finding that the insurance company's failure to obtain a salvage title was the proximate cause of the consumer's harm. *Id.* at 1257. Thus, despite the fact that the plaintiff attempted to cancel its purchase contract prior to learning about the title issue, the appellate court still held that the insurance company proximately caused the harm, and permitted the Plaintiffs to proceed on their fraud and negligence claims. *Id.*

Likewise, in *O'Brien v. B.L.C. Insurance Company*, a court upheld a jury finding that an insurance company was liable for failing to obtain a salvage title. 768 S.W.2d 64 (Mo.1989). In *O'Brien*, the insurance company settled with its insured for a total loss following severe flood damage to a vehicle. The insurance company sold the vehicle to a used car dealership for salvage, but did not obtain a salvage title. The used car dealership changed the odometer reading and did not tell the consumer plaintiff about the flood damage. A jury found against the insurance agency, and the appellate court reversed, finding no proximate cause. *Id.* at 67. The state supreme court reversed the appellate court, finding that the failure to obtain salvage title proximately caused the plaintiff's damages:

> The insurer's employees were quite familiar with the motor vehicle salvage statutes. Salvage operations were a part of their daily business. They nonetheless armed [the used car lot] with a certificate of title which enabled [it] to do the very thing the statutes prohibited, marketing the vehicle as an over-the-road vehicle without a salvage report to the Department of Motor Vehicles. The jury might believe that [the used car lot] wanted the certificate of title in the form submitted in order to carry out his scheme.

*Id.* at 67. The court went on to reject the insurance company's argument that the mere failure to title could not possibly have caused the injury, since the injury was actually caused by the used car salesman's misrepresentations, stating:

> [a jury] might also conclude that, had the insurer made it possible for [the used car lot] to obtain only a salvage title, revealing that the vehicle had been flooded, [the used car lot] would have declined to market the vehicle, or would have taken additional precautions during the inspection, or would have advised the purchaser that the vehicle had been flooded

*Id.* at 68. Therefore, "compliance with the salvage title statutes very well might have

prevented [the used car lot] from foisting a flood-damaged vehicle off on an unwitting purchaser." *Id.*

The instant case presents similar facts as *Conatzer* and *O'Brien.* Horace Mann, the insurance agency, did not obtain a salvage title on a vehicle it paid a total loss claim on. The vehicle was ultimately sold to Lewis, who did not know the vehicle's history. On these facts, a jury might conclude that Horace Mann's inaction enabled Zemba to sell the car without fully disclosing the vehicle history, and Zemba might have had to reveal the history had the vehicle been properly titled. While *Conatzer* and *O'Brien* are from outside Ohio, the court finds their logic both persuasive and consistent with Ohio law on intervening causation. In Ohio, a defendant may be relieved of liability for his negligent conduct in breaching a statutory duty "if an intervening act breaks the causal connection between the defendant's negligence and the injury." *Sabbaghzadeh v. Shelvey,* 2000 WL 763322 at *5, 2000 Ohio App. LEXIS 2511 at *14–15 (Ohio Ct.App. June 14, 2000) (relying on *Berdyck v. Shinde,* 66 Ohio St.3d 573, 613 N.E.2d 1014 (1993)). Ohio case law clarifies that "[i]ntervening causation is not proven if the alleged intervening cause was reasonably foreseeable by the one who was guilty of the negligence." *Queen City Terminals v. General Am. Transp. Corp.,* 73 Ohio St.3d 609, 619, 653 N.E.2d 661 (1995). To determine foreseeability, courts must assess "whether the original and successive acts may be joined together as a whole, linking each of the actors as to the liability, or whether there is a new and independent act or cause which intervenes and thereby absolves the original negligent actor." *Id.,* quoting *Cascone v. Herb Kay Co.,* 6 Ohio St.3d 155, 160, 451 N.E.2d 815 (1983). The *O'Brien* and *Conatzer* courts concluded that the ultimate sale of a clean-titled vehicle to an unwitting consumer is reasonably foreseeable when an insurance agency sells the vehicle without first obtaining a salvage title. Thus, Horace Mann has not demonstrated that any actions by Zemba were intervening acts which absolve it of liability. For these reasons, the court finds that a reasonable jury could find that Horace Mann's acts or omissions did cause Lewis's damages.

Accordingly, Defendant's motion for summary judgment is denied as to Plaintiff's negligence per se claim under Michigan Vehicle Code § 257.217c. However, Defendant's motion for summary judgment is granted as to Plaintiff's other two negligence per se claims.

### 3. Lewis's Negligence Claim

In Ohio, "it is well established that the elements of an ordinary negligence suit between private parties are (1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) injury that is the proximate cause of the defendant's breach." *Wallace v. Ohio Dept. of Commerce,* 96 Ohio St.3d 266, 773 N.E.2d 1018, 1025–26 (2002) (relying on *Mussivand,* 544 N.E.2d at 270). Lewis's negligence claim is based upon nearly identical allegations as his negligence per se claims. He asserts that Horace Mann had a duty to "act reasonably with regard to the transfer of ownership of vehicles that it declared to be total losses, including but not limited to the duty to disclose that Horace Mann owned the vehicle, and that the vehicle had been declared a total loss and was an insurance salvage vehicle." (Pl. Am. Compl. ¶ 42, ECF No. 6.) Lewis contends Horace Mann breached that duty by not obtaining such a title, which caused him to pay more for the Vehicle than he otherwise would have. While the proximate cause and damages analysis under this claim would be the same as for the negligence per se claims, the existence of a duty presents a different legal issue. It is unclear to the court exactly how the duty alleged under this negligence claim differs,

if at all, from the statutory duty in the negligence per se claims. Moreover, as the parties simply did not discuss or brief the existence or non-existence of a separate duty, the court will not address the merits of this claim at this point. Accordingly, Defendant's Motion for Summary Judgment on this issue is denied at this time.

### 4. Lewis's Negligent Misrepresentation Claim

 In order to recover for negligent misrepresentation, a plaintiff in Ohio must establish that

[o]ne who, in the course of his business, profession or employment, or any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for economic loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Gentile v. Ristas,* 160 Ohio App.3d 765, 788–89, 828 N.E.2d 1021 (2005). There is no allegation that Horace Mann made any statement as to the condition of the car to Diehl or any subsequent purchaser. Therefore, the claim rests on Lewis's allegations that Horace Mann failed to properly title the Vehicle. Such a failure constitutes an omission. Thus, Lewis contends that Horace Mann's omission misrepresented the nature and history of the Vehicle. This claim fails as a matter of law no matter what Lewis can prove because "[a] claim for negligent misrepresentation does not lie for omissions; rather, there must be an affirmative false statement." *Id.* at 789, 828 N.E.2d 1021 (quoting *Leal v. Holtvogt,* 123 Ohio App.3d 51, 702 N.E.2d 1246 (1998)). Horace Mann made no statements to Diehl Auto about the condition of the Vehicle; rather, Diehl repaired the Vehicle and knew its condition. While subsequent sellers may have made affirmative misrepresentations about the Vehicle's condition, Horace Mann did not do so. Therefore, the court grants Horace Mann summary judgment on Lewis's negligent misrepresentation claim.

### 5. Lewis's Fraud Claim

For a plaintiff to recover for fraud under Ohio law, he must prove:

(1) a representation or, when there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance on the representation or concealment, and (6) an injury proximately caused by that reliance.

*Gentile,* 828 N.E.2d at 1033; *See also Graham v. Am. Cyanamid Co.,* 350 F.3d 496, 507 (6th Cir.2003). In order to prevail at trial, Lewis would have to show: (1) Horace Mann had a duty to disclose the Vehicle's history and concealed that fact; (2) the Vehicle's history was material to the car sale transaction; (3) Horace Mann knowingly concealed the Vehicle's history by not getting a salvage title or by putting title in its name; (4) with the intent of inducing a ultimate consumer into buying it; (5) Lewis justifiably relied on the concealment in deciding to purchase the Vehicle; and (6) Lewis paid more for the Vehicle than he would have had Horace Mann properly titled it.

 Horace Mann challenges the reliance element. It contends that since Lewis admitted he never reviewed the title prior to purchasing it from Zemba, it cannot be said that he relied on Horace Mann's representation or concealment of a fact. Ohio law is that "[f]alse representations or concealment alone are not action-

able. There must exist a causal chain from the fraud of one party to the act of the other. The necessary causal link is called reliance." *Morris v. Inv. Life Ins. Co.,* 18 Ohio App.2d 211, 248 N.E.2d 216, 221 (1969). Further, "[a] representation must have come to the knowledge of the complaining party and it must appear that it was made directly or indirectly to the party, since it cannot be supposed that a person may be influenced by a statement which was neither made nor communicated to the person." Oh. Jur.3d. Ed., Fraud & Deceit § 89; *Lin v. Gatehouse Constr. Co.,* 84 Ohio App.3d 96, 616 N.E.2d 519, 524 (1992).

▬▬▬ Based on the facts of this case, a jury could find that Lewis relied on Horace Mann's concealment of the vehicle history. Lewis relied on the fact that there was no salvage title to the extent the Zemba salesperson told him the Vehicle had never been in an accident. Just as in *Conatzer* and *O'Brien,* the insurance company's concealment started the chain of events that ultimately put the seller in a position to make representations to a consumer that a vehicle was clean. Under these facts, the *Conatzer* court held that a consumer had stated a claim for fraud. 15 P.3d at 1257. It does not matter that the sale to Lewis was several transactions removed from Horace Mann; "where a party makes false representations to another with the intent or knowledge that they be exhibited or repeated to a third party for the purpose of deceiving him, that third party can maintain a tort action against the party making the false statements for the damages resulting from the fraud." *Nernberg v. Pearce,* 35 F.3d 247, 251 (6th Cir.1994) (quoting *Cormack v. American Underwriters Corp.,* 94 Mich.App. 379, 288 N.W.2d 634, 637 (1979)). The courts sees

no difference in the instant circumstances between a false representation and a concealment. Horace Mann's potential liability turns on the extent to which its concealment enabled others to further the concealment down the line. Any alleged concealment could have indirectly made its way to Lewis.

The court notes that this is not unlike a buyer's reliance on a real estate chain of title. In a real estate transaction, a fraudulent concealment or misrepresentation during an earlier transaction could lead a later purchaser to rely on a clean chain of title to his detriment. In such a case, the buyer may rely on representations made by subsequent owners, but it is the original concealment that enables any subsequent representations or misrepresentations.

Horace Mann also asserts that Lewis failed to plead fraud with sufficient particularity under Federal Rule of Civil Procedure 9(b). According to Horace Mann, Lewis did not plead "the time, place and contents of the misrepresentation(s) upon which he relied." *Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir.1984). The court disagrees. Lewis did plead the details of the concealment with specificity, and did indicate that the concealment was the failure to obtain salvage title or place Horace Mann's name on the title.

Horace Mann's motion for summary judgment as to the fraud claim is denied.

### 6. Punitive Damages

▬▬▬ Horace Mann also moves for summary judgment as to Plaintiff's claim for punitive damages.[2] Under Ohio law, punitive damages are not available for negligence. *Petrey v. Liuzzi,* 76 Ohio App. 19, 61 N.E.2d 158, 162 (1945). The only claim where Lewis could potentially seek puni-

---

**2.** The bulk of Defendant's arguments against punitive damages are based on the assumption that the court (1) grant summary judg-

ment as to the fraud claim; and (2) apply Michigan law. Since this court has denied summary judgment on the fraud claim and

tive damages is the fraud claim. To seek punitive damages, a Plaintiff must demonstrate actual malice. *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 635 N.E.2d 331, 341 (1994). Actual malice is "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Id.* (quoting *Preston v. Murty*, 32 Ohio St.3d 334, 512 N.E.2d 1174, 1176 (1987)). Horace Mann maintains Lewis has not pleaded and cannot prove there was any "right" it disregarded. Lewis contends Horace Mann acted in conscious disregard for his rights, citing the Michigan statutory rule on obtaining salvage titles. The court agrees with Lewis; for purposes of summary judgment, Lewis has pled a specific right was disregarded. He has put forth evidence showing an incentive among dealers not to obtain a salvage title because a salvage title decreases resale value. A jury could conclude that based on this incentive and the Michigan title law, Horace Mann consciously disregarded a right. Horace Mann has not presented any case law to the contrary and has thus not met its burden in seeking summary judgment. Accordingly, the motion for summary judgment with respect to punitive damages is denied.

## IV. CONCLUSION

Horace Mann did not ultimately sell the Vehicle to Lewis or make any direct representations to him. However, Horace Mann's failure to obtain a salvage title set in action a chain of events which led to Lewis's purchase. A jury could reasonably find that Horace Mann's actions caused Lewis's damage and were fraudulent. Accordingly, and for the reasons stated above, Horace Mann's Motion for

held that Ohio law applies, the court need not

Summary Judgment (ECF No. 56) is granted in part and denied in part. The remaining claims are for negligence *per se* under Michigan's Titling Statute, negligence, and fraud. Horace Mann's Motion for Reconsideration (ECF No. 64) is denied; Lewis's Motion for Leave to Supplement Ronald Lewis's Affidavit (ECF No. 68) is denied; Horace Mann's Motion to Strike Richard Diklich's Affidavit and portions of Ronald Lewis's Affidavit (ECF No. 66) is granted in part and denied in part. Finally, Ohio law will be applied to all claims.

This case is hereby set for a settlement conference on September 1, 2005, at 10:00 a.m., before Magistrate Judge William Baughman. All parties shall attend.

This case is set for trial on October 17, 2005, at 9:00 a.m. A separate trial order shall issue.

IT IS SO ORDERED.

address these arguments.